The Sheridan Electric Light Company of New York, Appellant, *v.* The Chatham National Bank, Respondent.

Under the provision of the Revised Statutes (1 R. S. 600, § 1, subd. 5), authorizing corporations "to appoint such subordinate officers and agents as the business of the corporation shall require," the board of trustees of a manufacturing corporation may appoint an executive committee of its members, and invest it with power to transact the business of the company during the interval between the meetings of its board of trustees.

Such committee may delegate to one of its number power to do merely ministerial acts, such as the indorsing of checks payable to the corporation and receiving the money thereon.

Reported below, 52 Hun, 575.

(Argued June 17, 1891; decided October 6, 1891.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 24, 1889, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward D. McCarthy* for appellant. The burden of proof was on the defendant. (*Millard* v. *Thorne*, 56 N. Y. 155; *Murray* v. *Ins. Co.*, 85 id. 236; *McCullough* v. *Moss*, 5 Den. 575; Paley on Agency [3d ed.], 192; *N. R. Bank* v. *Aymar*, 3 Hill, 262, 263, 265, 266; *Atwood* v. *Mannings*, 7 B. & C. 278; *Craighead* v. *Peterson*, 72 N. Y. 279.) The letter of attorney was not an act of the board of trustees of the plaintiff. (Taylor on Corp. § 250; 109 N. Y. 512; 3 Bosw. 575, 600; 89 N. H. 51; 7 Wend. 31–33; 7 Gratt. 352; 4 Paige, 133; 1 Seld. 334; *McCullough* v. *Moss*, 5 Den. 575; *In re St. Anthony's Church*, 109 N. Y. 512; *Craighead* v. *Peterson*, 72 id. 279.) But concede that the executive committee had been empowered to do all that Shepard did; still the plaintiff would not be bound, because the act was not done by the

executive committee, and it could not confer on another a power which had been conferred on itself. (Story on Agency, § 13; 1 Daly, 542; 1 Hill, 804; 4 Johns. Ch. 369; 4 Mass. 595; 12 id. 237; 1 Frost, 149; 33 N. H. 297; 27 N. Y. 558; 19 id. 216; 1 Bosw. 436; *In re E. P. H. Co.*, 12 Mass. 237; 2 Kent [4th ed.] 633; *Henderson* v. *Barnewell*, 1 Y. & J. 387; *Blore* v. *Sutton*, 3 Meriv. 237; *Mason* v. *Joseph*, 1 Smith, 406; 72 N. Y. 279; 3 Hill, 262; 7 B. & C. 278; 32 N. Y. 553.) There is no question here of the implied powers of agents of a corporation. (Story on Agency, §§ 76, 81–83; *Eldred* v. *Hazlett*, 33 Penn. St. 307; *S. A. Church* v. *P. Bank*, 39 Hun, 498; 109 N. Y. 512.) There was no ratification. (*McCullough* v. *Moss*, 5 Den. 575; *Hodges* v. *City of Buffalo*, 2 id. 110.) No question of estoppel is involved. (*Evans* v. *Smallcombe*, L. R. [3 H. L.] 255; *Kent* v. *Q. M. Co.*, 78 N. Y. 159; 90 id. 612.)

*Sanford H. Steele* for respondent. The plaintiff's interest in the checks at the time when they were delivered to defendant, was limited to $10,000, which amount it received. (*Clements* v. *Yturria*, 81 N. Y. 285; *Chicago* v. *Sheldon*, 9 Wall. 50–54; Pollock on Cont. 403; *Reading* v. *Gray*, 5 J. & S. 79; *Nickerson* v. *R. Co.*, 17 Fed. Rep. 408; *Marshall* v. *Berridge*, L. R. [19 Ch. Div.] 223; *Griswold* v. *Haven*, 25 N. Y. 595.) The checks in question were duly indorsed and delivered by the plaintiff. (Abb. Tr. Ev. 48, § 58; 1 Whart. on Ev. §§ 661–663; *Hoyt* v. *Thompson*, 19 N. Y. 207.) Plaintiff ratified the acts of its executive committee. (Taylor on Corp. § 212; Field on Corp. § 165; *Codwise* v. *Hecker*, 1 Caines, 526; *Lawrence* v. *Taylor*, 3 Hill, 107; 1 Livermore on Prin. & Agent, 44; Field on Corp. § 165; *S. H. B. Co.* v. *Eickemeyer*, 90 N. Y. 607; *Newhope* v. *P. Bank*, 3 id. 156; *Kent* v. *Q. M. Co.*, 78 id. 159; *Messenger* v. *F. N. Bank*, 6 Daly, 190; *Hazard* v. *Spears*, 4 Keyes, 469.) The plaintiff company ratified the acts of the agent appointed under power of attorney. (39 Hun, 498; *Scott* v. *M. R. Co.*, 80 N. Y. 200; *Kelsey* v. *N. Bank*, 69 Penn. St. 426; Taylor on

Corp. §§ 256, 259.) A principal, after money has been paid to an unauthorized agent assuming to have power to receive it, has his election to disregard the payment and sue the party who wrongfully paid it, or he may treat the person to whom it has been paid as receiving it to his use, and thereby adopt and ratify the agency. But he cannot do both. (*Terry* v. *Munger*, 121 N. Y. 161; *Fowler* v. *B. S. Bank*, 113 id. 450; *Conrow* v. *Little*, 115 id. 387; *Riley* v. *A. S. Bank*, 36 Hun, 513; 103 N. Y. 669; *Rodermund* v. *Clark*, 46 id. 354; *Littlefield* v. *Brown*, 1 Wend. 398; 11 id. 467; *Morris* v. *Rexford*, 18 N. Y. 552; *Strong* v. *Strong*, 102 id. 69; *Moller* v. *Tuska*, 87 id. 166; *Sawyer* v. *Woods*, 3 Johns. Ch. 416, 422; *Vernon* v. *Hansen*, 2 T. R. 287; *Hammersley* v. *Purling*, 3 Ves. 757; Herman on Est. 1183.)

HAIGHT, J. This action was brought for an alleged conversion of certain checks upon banks located in the state of Ohio, and payable to the order of the plaintiff.

The plaintiff was a manufacturing corporation and owned or controlled the patents for the Sheridan system of electric lighting. On or about the 8th day of February, 1882, it entered into an arrangement with O. C. Kendrick and E. L. Shepard to organize companies in the different states and territories for electric lighting under the Sheridan system, and to every company so organized having a capital stock of at least one hundred thousand dollars, they were to give the exclusive right to use and sell electric lights, lamps and dynamo machines for electric lighting under the Sheridan patents in the state or territory for which the company should be organized; that each company so organized was to pay twenty-five per cent of its full-paid non-assessable stock to the plaintiff and also purchase from the plaintiff before the licenses were granted, treasury stock to the amount of five per cent of the capital of such company, that is to say, should the capital stock of the company be one hundred thousand dollars, then such company must purchase and pay cash at par value five thousand dollars for treasury stock of the plaintiff and in the

same proportion, be the capital more or less; provided, however, that no single company shall be obliged to purchase more than ten thousand dollars worth of the afore-mentioned stock. This contract was in the form of a letter addressed to Kendrick and Shepard and signed by Ellis, the president of the plaintiff, and was authorized by its executive committee. Under date of March 3, 1882, Kendrick and Shepard addressed a letter to the president of the plaintiff, in which, among other things, they state: "You are also aware that any profit accruing to us under our contract with the New York company, of February 8, 1882, must come by way of any excess in cash or stock receipts from the companies we organize over and above the stipulations of said contract with your company. This is not provided for definitely in the existing contract and as we may deem it best to cover that excess by making all the cash and stock coming to the company and ourselves payable to the order of the Sheridan Electric Light Company of New York, we respectfully ask you to give us an official paper, something like the enclosed marked 'A,' which shall secure the prompt payment of such excess in kind to our order." In answer to this, the plaintiff through its secretary, under date of March 21, 1882, answered as follows: "The contract made with you on the eighth of February, specifies the amount to be paid this company. Any excess whatever in stock of this company or in cash or stock of branch companies belongs to you and should the same be received by us, it will be immediately transferred to you." Kendrick and Shepard then proceeded to organize a corporation at Cleveland, Ohio, under the laws of that state, having a capital stock of one million dollars. They procured the checks in question amounting to fifty-five thousand dollars payable to the order of the plaintiff and took them to New York. Thereupon the executive committee of the plaintiff, consisting of Mr. Ellis, the president and treasurer, and Mr. Smith, a trustee, executed and delivered to William A. Shepard, the other member of the executive committee, a power of attorney in which they constituted him their true and lawful attorney in their name, place and stead,

to close and consummate all transactions with Kendrick and Shepard in the matter of the sale of the rights to use and sell and to form companies to use and sell the rights and dynamo machines made under the Sheridan patents in and for the state of Ohio and to receive all moneys and checks paid by Kendrick or Shepard, and to sign all papers and checks or indorse the same necessary to carry out transactions, giving and granting unto such attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises. Under this power of attorney W. A. Shepard indorsed the checks in question, and they were thereupon discounted by the defendant and the proceeds thereof were delivered to Kendrick and Shepard, with the exception of the sum of ten thousand dollars which was paid over to the plaintiff.

It is contended that this power of attorney did not authorize the bank to accept and discount the paper; that what it did was without authority, rendering it liable for the conversion of the checks.

The power of attorney in plain language does authorize William A. Shepard to indorse the checks and to receive the money thereon. If, therefore, the power was legally delegated to him the bank would be protected. It does not appear that the trustees of the plaintiff ever adopted any by-laws. It does appear, however, that they had elected an executive committee, consisting of the three persons named, who were also trustees, and that they were a majority of the board. There is some conflict in the testimony as to the power delegated to the executive committee, Mr. Shepard testifying that an executive committee was elected upon his motion, and that they were given full power to do any and all of the business of the company required to be done in the interim between meetings of the trustees. Mr. Falk, the secretary, had no recollection of such a resolution and had no entry in his minutes thereof further than that an executive committee of three members of the board of trustees was elected. He, however, upon cross-examination admitted that he only entered

the substance of resolutions in his minutes and did not always enter them in full. The trial court appears to have believed the testimony of Shepard upon that conflict and found the facts accordingly. Such finding having been approved by the General Term must, so far as this review is concerned, be treated as final. We thus have an executive committee empowered to do all of the business of the company that is required. Such committee had made the contract with Kendrick and Shepard under which the Ohio company was organized. It is under the provisions of that contract that the plaintiff seeks to recover the checks or the value thereof. The indorsing of the checks and drawing the money thereon was but a part of the transaction, and if the committee had the power to make the contract it would seem to follow that it also had the power to draw the money upon the checks which had been issued in payment for the rights granted thereunder.

The business of a manufacturing corporation must be carried on by a board of trustees, but such trustees are empowered to appoint such subordinate officers and agents as the business of the corporation shall require. (1 R. S. 600, § 1, subd. 5 ; 2 id. [7th ed.] 1531, § 5.)

Under this authority they may appoint an executive committee of their own members, investing it with power to transact the business of the company during the interval between the meetings of the board of trustees. (*Olcott* v. *Tioga Railroad Company*, 27 N. Y. 546–557.)

Whether the executive committee may have power to delegate its judgment and discretion it is not necessary to now consider. The power delegated to W. A. Shepard was to indorse the checks and to receive the money thereon; purely ministerial acts.

The questions as to whether the plaintiff was the owner of the checks, except to the extent of the ten thousand dollars which it received, and as to the subsequent ratification of the acts of the executive committee by the board of trustees are involved in another case pending between the plaintiff and Kendrick and Shepard. The conclusion which we have reached

in reference to the power of Shepard to indorse the checks renders it unnecessary to now consider those questions and we have thought it advisable to leave them to be determined in that action.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.