## M. GROH'S SONS v. GROH.

(Supreme Court, Appellate Division, First Department. February 13, 1903.)

1. CORPORATIONS—SALE OF STOCK—MISAPPROPRIATION—EVIDENCE.

In an action by a corporation for money claimed to have been misappropriated by a partner from the concern while it was still a partnership, and for money misappropriated by the same person while he was an officer of the corporation, evidence examined, and *held* sufficient to support a verdict that the money was never so misappropriated.

2. SAME—DIVIDENDS—INFORMAL DECLARATION — SALE OF STOCK—RIGHTS OF CORPORATION.

Where the owners and holders of all the stock of a corporation, which was a family affair, and conducted without formalities, agreed among themselves to a distribution of a certain sum, to which they were entitled as dividends, the corporation could not object to such action, though the money was distributed after a portion of the stock was sold to another.

3. SAME—RIGHTS OF PURCHASER.

Where the owners and holders of all the stock of a corporation, which was a family affair, and conducted without formalities, agreed among themselves to a distribution of a certain sum, to which they were entitled as dividends, a subsequent purchaser of a portion of the stock was not entitled to such stock's portion, unless it was so understood.

4. SAME—EVIDENCE.

In an action by a corporation for money alleged to have been misappropriated, but which the defendant alleged was due himself and mother as dividends earned on the stock of the corporation while they were its sole owners, evidence examined, and *held* sufficient to support a finding of an agreement between the defendant and his mother, when they were such owners, that such sum should be distributed from the profits earned.

5. SAME—MISAPPROPRIATION—EVIDENCE—MATERIALITY.

In an action where the only issues were as to what right defendant had to take certain sums of money from a corporation in which he was a minority stockholder, evidence was immaterial as to the amount of salaries paid the officers under the management of the majority stockholders.

6. TRIAL—EVIDENCE—SPECIFIC OBJECTIONS.

An objection to evidence on the ground of materiality does not also raise the question as to its being incompetent and prejudicial.

7. SAME—REQUESTED CHARGE—CURING OF ERROR.

Where evidence was improperly admitted over the objection of plaintiff, and subsequently the court gave plaintiff's requested charge that the subject-matter of such evidence had no bearing on the case, relief having been granted to the full extent asked, the error was cured.

**8. SAME—FAILURE TO OBJECT.**

An answer of a deceased defendant was introduced in evidence by defendant, his executrix, and, objections thereto having been overruled and exceptions taken, the court stated, in response to plaintiff's question, that the answer was received only as one of the pleadings of the case. *Held,* that plaintiff's failure to object to such final ruling amounted to an acquiescence.

**9. SAME—COMMENT TO JURY.**

An answer of a deceased defendant was introduced in evidence by defendant, his executrix, over the objection of plaintiff. Subsequently defendant withdrew the answer, but the court gave defendant's counsel the right to comment thereon to the jury; counsel for plaintiff making no objection and taking no exception. *Held,* that plaintiff could not predicate error on such disposition of the matter.

**10. APPEAL—RECORD.**

Where the alleged improper remarks to the jury of opposing counsel do not appear in the record, the error cannot be considered on appeal; the proper method being to call the attention of the court to such matter, take exception thereto, and insert the matter in the record.

O'Brien, J., dissenting.

Appeal from trial term, New York county.

Action by M. Groh's Sons against Julia A. Groh, executrix of John Groh. From a judgment in favor of defendant, and an order denying plaintiff's motion for a new trial, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, INGRAHAM, and McLAUGHLIN, JJ.

Thomas Allison, for appellant.

Abram I. Elkus, for respondent.

HATCH, J. This action was commenced against John Groh, and an answer was interposed by him. He died before the case came on for trial, his executrix was substituted as defendant, and an amended answer was served by her. The plaintiff is a domestic corporation. Three separate causes of action are alleged in the complaint. In the first cause of action it is averred that M. Groh's Sons prior to December 30, 1896, was a copartnership; that the defendant's testator, John Groh, had charge of its cash, and between June 1, 1895, and December 30, 1896, received $7,175.02 belonging to said copartnership, which he still retains, and refuses to account therefor; that the plaintiff purchased said copartnership and all its claims on the 30th day of December, 1896. For a second cause of action, that between December 30, 1896, and April 17, 1897, the said John Groh, while president and treasurer of plaintiff, received as such president and treasurer $1,577.53, the property of plaintiff, which he has appropriated to his own use; that the plaintiff has duly demanded of the said John Groh, prior to the commencement of this action, the sum so appropriated, but that he has failed to return the same. For a third cause of action, that the said John Groh on or about the 17th day of April, 1897, received from this plaintiff, without consideration, the sum of $6,763.16, and that said sum was procured by the said John Groh from this plaintiff by said Groh's representations that it was due and owing to him, when in fact there was nothing owing him from the plaintiff, all of which

¶ 10. See Appeal and Error, vol. 3, Cent. Dig. § 2896.

the said Groh well knew at the time he made the representations as aforesaid; that before the commencement of this action the plaintiff duly demanded from said John Groh the payment of said last-mentioned sum, so received by him without consideration; that the same has not been paid, nor any part thereof. Then follows a demand for judgment for the full amount set forth in the three causes of action,— $15,515.71. The answer, after admitting the copartnership of M. Groh's Sons, and the incorporation of the plaintiff, denies the receipt and appropriation of the money alleged in the first and second causes of action, and denies that the sum declared upon in the third cause of action was wrongfully obtained; averring that it was justly due to the said John Groh and his mother, Julia A. Groh, as the undivided earnings and profits upon their shares of stock in the concern. For a second and separate defense to the first and second causes of action, the defendant set forth a history of the transaction, which shows that prior to the 1st day of January, 1897, the defendant, with one Julia A. Groh, was carrying on the business of brewers, as a partnership under the firm name and style of M. Groh's Sons; that upon January 1, 1897, a corporation was formed for the purpose of carrying on said business under the same name, and all the real and personal property of the old firm was transferred to the corporation so formed; that the said John Groh and Julia A. Groh owned all the capital stock, in equal shares; that one George Flammer, an attorney and counselor at law, had been the attorney for the old firm, and continued to be the attorney for the corporation, and was the personal attorney for the said John and Julia A. Groh, and was familiar with and had knowledge of all their business affairs; that on April 16, 1897, the said Flammer purchased all the capital stock of said Julia A. Groh, being one-half of the whole, and through her purchased for himself one share from the said John Groh; that certain expenses, amounting to $8,332.30, up to the time of this transfer of stock, had been paid out by the said John Groh, and that he had not credited himself therefor upon the books of the corporation, and that on the 15th day of April, 1897, the said John Groh had said last-mentioned sum credited upon said books as expenses having been paid; that on or about the 15th day of April, 1897, the plaintiff, with the consent and approval of the said Flammer and Julia A. Groh, paid to the said John Groh and Julia A. Groh $3,381.68 each, which was due them as earnings upon their capital stock; that by an instrument in writing the said Flammer released the said Julia A. Groh from all the liability set forth in the complaint.

The first two causes of action may be considered together. For all practical purposes, they arise out of the same state of facts, and resort is had to the same class of proof in establishment of their existence as constituting a legal demand against the estate of John Groh. The proof upon the part of the plaintiff bearing thereon tended to show that the cashbook kept by the firm showed that there was cash received between June 1, 1895, and December 30, 1896, amounting to $7,175.02, which, so far as shown by the book, had not been paid over by John Groh to the firm, or deposited with the firm's assets, and that it had never been received by the corporation. The second cause of action was arrived at by deducting two items which had been enter-

ed in the cashbook under the direction of John Groh; one being, "By expenses, sundries, % old firm, $8,332.30." These two items made up the sum of $8,752.55, and deducting therefrom the amount claimed in the first cause of action leaves a balance of $1,577.53, the amount which the plaintiff claimed John Groh was chargeable with, which said sum has been in no wise accounted for by him to the corporation. The evidence to establish these two causes of action was given by the bookkeeper, Schwarzer. His testimony was to the effect that the balance stated in the first cause of action stood as a charge upon the cashbook as money received by John Groh for which he had not accounted; that on April 17, 1897, shortly before Flammer entered upon the control of the business, John Groh directed Schwarzer to make certain entries in the cashbook from a slip, among which were the two items heretofore mentioned. Schwarzer had no personal knowledge of the transaction, beyond what appeared upon the book, and the directions which Groh gave to him from time to time as to the entries to be made therein. Plaintiff's case, therefore, came to rest, in the establishment of these two causes of action, upon the cashbook, its entries, and an arithmetical calculation which produced the specified sum. It is easily seen that this evidence is by no means conclusive, in showing that John Groh owed these particular sums, and was bound to account therefor to the corporation. It appeared with much clearness that the business methods of the concern, carried on under the partnership which had existed before the formation of the corporation, were quite loose in character, and the books quite imperfectly and carelessly kept. For a long period of time it had been the custom of the firm to keep the cash received in one compartment of the safe used in the business, and checks and other paper items in another compartment. When deposits were made in a bank, they were made in equal sums, in units of $100. If the paper items to be deposited did not make, in amount, equal hundredths, enough money was taken from the safe to equalize the matter, so that the deposit would make the unit. In the course of business, money was placed in the safe and paid out without going into the cashbook at all; such moneys being represented by slips, which took the place of cash paid out. These items were never placed in the cashbook, and the bookkeeper knew nothing about them, did not have charge of the cash, did not know how much was paid out, and only made his entries in the book from time to time as specified and directed by Groh. This course of business had continued for a long period of time. When Michael Groh, the brother of John, was alive, he and John had access to the cash drawer, and they were the only persons who placed cash therein or paid cash therefrom. During Michael's lifetime he gave more attention to this branch of the business than did John. When he died, John was the only person who had control of the matter. It appeared by the testimony of one Wernz that he was in the employ of M. Groh's Sons from the beginning of 1895 to August, 1896; and he states the course of business during that period of time, and testifies that sums of money for a considerable number of purposes were paid out from the cash drawer without entering the sums in the cashbook; that the sums so paid out

were usually represented by slips, but no entries of the transactions appeared upon any book. The two brothers and Julia A. Groh, the mother, were the only persons interested in the partnership; and it being a family affair, among the members of which existed amicable relations, no complaint was made of the looseness of business methods, or that which obtained in the receiving and paying out of cash. It is easy to see that under this system, involving, as it did, the receipt and payment of large sums of money, bookkeeping would only represent a part of the transaction, and would furnish a very unsafe basis upon which to found a charge of the misappropriation of moneys. The whole subject-matter was gone into in considerable detail, and it is quite evident that the jury were authorized to find that the moneys which these items in the cashbook showed did not in fact represent the sums on hand which John Groh was required to turn over to the corporation, and also to find that, at the time when the transfer was made to Flammer, there was no money, in fact, actually chargeable against John Groh, and due to the corporation. Upon these two causes of action the evidence was conflicting. Different inferences can easily be drawn therefrom. The jury were authorized to draw the inference, and, having found that John Groh was not chargeable with these sums, we think such conclusion must be supported.

The third cause of action presents a different question, and rests upon different evidence. When Flammer assumed control of the corporation, on April 17, 1897, John Groh directed Schwarzer to draw two checks,—one for $5,241.65, and the other for $1,521.47. The bookkeeper testifies that, after the checks were drawn, John Groh went to the desk of Mr. Flammer, in the same office, and said: "Here is two checks I wish you to sign. They are moneys due me from the old firm." "Mr. Flammer said, 'Well, if you say they are all right, I will sign them.'" They were thereupon signed and handed to Groh. Of the proceeds of these checks, John Groh paid one-half to his mother. The fact that he had these two checks and their proceeds is undisputed. John Groh's estate, therefore, is liable to pay the same, unless it is made to appear that he and his mother were entitled to receive this sum of money as due to them from the corporation. It is claimed by the defendant that such is the fact; that these persons were entitled to have and receive such sums as profits or earnings upon their stock in the corporation between December 30, 1896, and April 17, 1897, during which time they were the owners and holders of all the stock, and would be entitled to a dividend therefrom, if in fact it had been earned and declared. The corporation at this time was a family affair. It had changed none of its business methods from what had existed when it was a partnership. John Groh and his mother owned all the stock and bonds. They were a majority of the board of directors; the third member was an employé, and followed Groh's instructions. All the offices of the corporation were held by John Groh and his mother, and the former conducted the business of the corporation without going through the form of holding directors' meetings, or evidencing any act of the corporation by written minutes. In so far as John Groh dealt with third

parties in connection with the business carried on by the corporation, he could create a legal liability against it, and a third party would not be driven to the necessity of showing a resolution authorizing such dealing, or other minute vesting him with authority to act. Under such circumstances, the business of the corporation may be lawfully carried on without formal votes, and, if the obligation incurred is within the general scope of the business of the corporation, the transaction will be upheld, and the third party need not prove formal action, to establish the liability of the corporation. Sheridan Electric L. Co. v. Chatham Nat. Bank, 52 Hun, 575, 5 N. Y. Supp. 529; affirmed on appeal, 127 N. Y. 517, 28 N. E. 467; Hall v. Herter, 83 Hun, 19, 31 N. Y. Supp. 692; s. c. on another appeal, 90 Hun, 280, 35 N. Y. Supp. 769; affirmed on appeal on opinion below, 157 N. Y. 694, 51 N. E. 1091. As between the owners and holders of all the stock of the corporation, it must, in principle, follow that the members of such corporation, entitled to receive dividends, may agree among themselves, either by conversation or otherwise, to appropriate of the funds of the corporation a specified sum, as agreed upon, and distribute the same; and the stockholder, upon the receipt of it, will acquire good title thereto as against the other members of the corporation. It amounts to a mere division of the property by agreement of all the parties in interest, and, as between them, it is perfectly good, and may not be attacked, where the act does not impair the rights of third parties. It appears in the testimony that this money was in fact divided between Mrs. Groh and John, and Mrs. Groh testified that it was her share of the moneys which belonged to the old firm; that she knew that this was money due to her; the amount that was coming, she did not know until she received it, but the purpose for which it was to be paid, she did know, and it had been the subject of an arrangement between herself and John prior to the time when it was to be paid to her. According to the testimony of the bookkeeper, John Groh claimed when he received the checks that they were for money due to him which had accrued prior to the transfer to Flammer. Flammer also understood this claim, as Groh told him what the money was for, and he knew when he signed the checks that they were given for the purpose of discharging a claim.

If the claim existed, as a legitimate debt, which Groh and his mother were entitled to withdraw from the corporation, then he had the right to take the same, and Flammer could not be misled as to the purpose for which the checks were delivered, if the claim existed. It only remains, therefore, to see if the evidence was sufficient to authorize the jury to find that the moneys represented by the checks had in fact been appropriated by agreement between Mrs. Groh and her son, while they were the owners and holders of the stock, and in control of the corporation. The evidence as to the earnings of the corporation during the period of time when its stock was held by Mrs. Groh and her son is the subject of much testimony. The figures are not only confusing, but counsel have been enabled to draw entirely different conclusions from the testimony. The defendant claims, and quotes from the testimony to show, that the profits of the cor-

poration during this period of time were, upon the average, $3,350 per month. and, up to the time when the transfer to Flammer took place, amounted to something over $11,000, while from the same testimony the plaintiff ·is enabled to extract that the average profits per month were only $850.66⅔ per month, and for the 3½ months the gross profits amounted only to $2,977.33⅓. The checks amounted to $6,763.12. It may be said that the evidence in establishment of the sum earned as profits at this time is quite uncertain,—so much so that to make an accurate estimate of the same is quite impossible. The amount withdrawn was much less than the defendant claims was earned, and over twice as much as claimed by the plaintiff. The proof clearly shows that some sum was earned as profits, and the jury were authorized to find that the sum which was withdrawn by the defendant did not exceed the amount of profits which the business had earned. Because the proof is somewhat uncertain, does not preclude the jury from finding a fact therefrom, and the result of their finding is no more speculative and conjectural than it is in many other classes of actions; and because it is difficult or impossible to arrive at exact figures, does not furnish a reason why the jury should make no finding at all. All the facts have been laid before them, and from those facts they were authorized to make the finding which they reached. Equitably, Mrs. Groh and her son were entitled to the profits which the stock of the corporation had earned during the time they were the exclusive owners thereof. The defendant Flammer by his purchase did not acquire the right to such profits, unless it was understood that no dividend was to be paid therefrom. The profits having been earned, and Mrs. Groh and her son being equitably entitled thereto, they had the right to agree upon the withdrawal of a sum which should not exceed their interest prior to the time when Flammer's interest attached. That they did so agree is meagerly established by the testimony, but enough, we think, appeared to authorize the jury so to find. Mrs. Groh understood that she was to have and receive the sum of money on account of this matter. What its exact amount was, she did not know. Nobody could have known, from the manner and method in which the business was conducted. That John Groh so understood it is also made clear. His mouth is closed, but the fact that he made the claim that this sum was due him, and that he asserted such claim when the checks were drawn and signed, had previous to that time negotiations with his mother, and subsequently gave to her one-half of such proceeds, is sufficient evidence from which the jury could find that the agreement to distribute this sum of money was made between them, and that such sum represented the earnings of their stock for the period of time they were exclusively entitled to have and receive the same. We think, therefore, that the jury were authorized to find that the plaintiff was not entitled to recover upon any of its causes of action.

It is claimed, however, that errors were committed upon the trial which call for reversal of this judgment. The defendant was permitted to prove that, after Flammer entered upon the control of the affairs of the corporation, he made himself president thereof, and his two

brothers-in-law directors; that he voted himself a salary of $15,000 a year, and subsequently increased it to $25,000, and also paid salaries to the other directors in connection with positions held by them in the management of the corporation. Objection was made to this testimony. The objection was overruled, and the testimony received. The basis of the objection was that it was immaterial. The testimony was immaterial to any issue presented by the pleadings. The plaintiff, however, nowhere claimed upon the trial that it was prejudiced by the introduction of such testimony. Its sole complaint was that it was immaterial, as bearing upon any issue. Upon this appeal it is argued that it was not only immaterial, but incompetent, improper, and prejudicial. It was the duty of council to call the court's attention to the ground of objection. Had the court's attention been called thereto, doubtless it would have excluded it, or it might have been withdrawn. Turner v. City of Newburgh, 109 N. Y. 301, 16 N. E. 344, 4 Am. St. Rep. 453. The question as now sought to be presented was not raised. Atkins v. Elwell, 45 N. Y. 753; Charlton v. Rose, 24 App. Div. 485, 48 N. Y. Supp. 1073. When the objection was made that the testimony was immaterial, it was conceded to be competent. Ward v. Kilpatrick, 85 N. Y. 413, 39 Am. Rep. 674.

Assuming, however, that error could be predicated of this ruling, it appears that, at the close of the charge, counsel for the plaintiff asked the court to charge that the amount of Mr. Flammer's salary had no bearing upon the issues in this action, and the court so charged. It was within the defendant's right to ask that this testimony be disregarded. Platner v. Platner, 78 N. Y. 90. Counsel did not ask that it be disregarded, but he·asked the court to charge that it had no bearing upon the issues. The court granted to the counsel all the relief in respect to such testimony which was asked to be given. He might have asked that such testimony be stricken from the record, and that the jury be instructed to disregard it, and requested such charge as would eliminate, so far as was possible to have eliminated, any harmful results which may have resulted from its introduction. Counsel, however, contented himself upon this subject with the request which he made, and which was charged; and, as he obtained with respect to such testimony all that he asked, he ought not now to be heard to complain because he did not ask more, or all to which he was entitled. If, therefore, error was committed in receiving it, it was cured by the request which was made, as relief was granted to the full extent to which the plaintiff asked.

It is further objected that counsel was permitted to read in evidence the answer, sworn to by John Groh. The record shows that the answer was introduced in evidence, and counsel objected upon the ground, "It is evidence for the plaintiff in his own behalf." The objection was overruled, and exception taken. Counsel for the plaintiff then asked:

"Does your honor admit it as evidence of the facts stated in it? The Court: No; it is not entitled to be regarded as evidence of the fact. Mr. Nathan: It is for that purpose my friend offers it,—because it is before the court for the trial of the issues, and not for the facts contained in it. The Court: I will receive it as one of the pleadings in the case."

Counsel did not object to this ruling of the court, which simply received the answer in evidence as one of the pleadings before the court. He is to be deemed, therefore, as acquiescing in 'this holding of the court that for this limited purpose it might be properly considered. The court expressly excluded it as evidence of the facts stated in it. At the close of the case, and before charging the jury, the court called the parties' attention to the reception of the answer in evidence, and stated that, if plaintiff stood upon the objection and exception, the answer would be stricken out, and further stated to counsel for the defendant that he had a perfect right to comment upon the pleadings before the jury. Defendant's counsel then stated: "Very well. I will withdraw it." The court then stated the qualification under which it was first admitted, and counsel for the defendant said, "I may comment on it to the jury?" to which the court replied, "Oh, yes; you have a perfect right." Counsel for the plaintiff made no objection to this disposition of the matter, and took no exception to the ruling of the court thereon. Consequently he must be considered as having acquiesced in such ruling, and may not now predicate error of it. It is urged upon our attention that counsel for the defendant commented upon the facts set forth in the answer before the jury, and made an argument based thereon. Such fact does not appear in anything contained in the record. If counsel's summing up to the jury was improper in any respect, the only way any question could be presented, arising thereon, was for the plaintiff to have called the attention of the court to the improper matter, taken an exception thereto, and inserted the language claimed to be improper in the record, so that the court upon the appeal might see that the exception thereto was good. There is nothing in this record which raises any such question. Indeed, there is nothing to show that the defendant even referred to the answer in his summing up before the jury.

Other exceptions have been urged upon our attention, but all of them are embraced within the discussion already had, and need not further receive attention from us. We do not think that any prejudicial error was committed against the plaintiff, which has been the subject of a proper exception, enabling it to be reviewed by this court, or, if so, plaintiff has waived any rights which he possessed to object thereto.

It follows that the judgment and order should be affirmed, with costs.

VAN BRUNT, P. J., and INGRAHAM and McLAUGHLIN, JJ., concur.

O'BRIEN, J. (dissenting). Upon the first two causes of action, questions of fact were presented to the jury. It was not shown that Groh had actually received the moneys, all that appeared being that he had directed such moneys to be charged up in the cash account as for expenses; and the jury were thus free to infer that the entries were correct, or that the moneys, if wrongfully drawn, were not so drawn by John Groh. Their conclusion, therefore, should not be disturbed, in finding no cause of action against the defendant as to these

sums. As to the third cause of action, however, I think there should be a reversal, and therefore dissent.

It appears that the money was withdrawn by check after Flammer had purchased his stock and bonds, and became entitled to a majority interest in the corporation, and after he was actually installed as treasurer, for his signature as treasurer was duly affixed to the checks in question. The claim made by the defendant is that such moneys were due to John Groh and to his mother, who prior to April 17, 1897, were the sole owners of the corporation which had been formed December 30, 1896; and it was sought to be inferred that such moneys were withdrawn for the purpose of paying the son and mother a dividend for the period between January 1 and April 17, 1897, and it was shown that, upon receipt of the checks, John Groh paid over to his mother a part of the moneys obtained. The entry made at the time such checks were given was, "To balance old firm account." A great deal of testimony was introduced, under exception, to show what the relations between Flammer and the Groh family had been, what he received as an officer of the corporation during the ensuing year, what his friends received, what the earnings of the company were, and what percentage thereof the defendant obtained, all with a view to showing that the money received by John Groh on April 17, 1897, which he divided with his mother, was no more than a fair dividend to be declared and obtained by them for the period between January 1 and April 17, 1897. Much of this evidence was evidently incompetent and immaterial; the issue being whether or not John Groh was justified in thus receiving moneys at the time he did. There is no doubt that had such moneys been taken by him prior to April 17, 1897, and at a time when Flammer had no interest in the corporation, such withdrawal would have been entirely justified, since only he and his mother were interested in the concern. Although they may have agreed prior to April 17, 1897, to withdraw from the company such moneys, in the way of a dividend, the fact remains that they did not do so, but waited until Flammer had made his purchase of stock and bonds, and was installed as treasurer of the company, when it was necessary to obtain his signature to make the withdrawal. It was not shown that Flammer, when he bought the stock and bonds, agreed to any such payment of dividends; but, on the contrary, regarding such payment as a debt, as it must be considered, if due at all, he had expressly stipulated in his written agreement that the defendant, Julia Groh, should assume all debts outstanding. The inevitable conclusion, it seems to me, is that the moneys withdrawn by John Groh on April 17, 1897, were withdrawn without authority, and that his estate is liable to the company for their return.

I think, therefore, that, as to the third cause of action, the judgment appealed from should be reversed, and, as to the first and second causes of action, it should be affirmed.