UNITED STATES of America,
Plaintiff-Appellee,

v.

E. REGENSBURG & SONS, a corporation, Defendant-Appellant,

and

Adele Regensburg, Executrix of the Estate of Isaac Regensburg, deceased, Defendant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

E. REGENSBURG & SONS, a corporation, Defendant-Appellant,

and

Sally Regensburg, Perls Ross and Edward Bellette Regensburg, as Administrators c. t. a. of the Estate of Bellette Regensburg, deceased, Defendants.

Nos. 231, 232, Docket 23402, 23403.

United States Court of Appeals
Second Circuit.

Argued March 15, 1955.

Decided April 11, 1955.

J. Edward Lumbard, U. S. Atty., New York City (Thomas C. Burke, Asst. U. S. Atty., New York City, of counsel), for plaintiff-appellee.

Paskus, Gordon & Hyman, New York City (Arthur B. Hyman, Charles H. Lieb and Robert R. Slaughter, New York City, of counsel), for defendant-appellant.

Before CLARK, Chief Judge, FRANK, Circuit Judge, and GALSTON, District Judge.

GALSTON, District Judge.

The primary question presented on these appeals is whether payments made to the stockholders of this family corporation were dividends, as the Government contends, or loans, as the appellants contend. In essence the same or similar question was presented to this court in Regensburg v. Commissioner, 2 Cir., 144 F.2d 41, certiorari denied 323 U.S. 783, 65 S.Ct. 272, 89 L.Ed. 625, and nothing that appears in the record herein warrants a different conclusion as to the nature of those payments.

The corporate defendant was engaged in the manufacture of cigars. It was a typical family business in that all of its capital stock, consisting of 1000 shares, was issued to Edward Regensburg, the founder, and his five sons. He and the sons were the sole officers and directors of the corporation.

The tax liabilities against Isaac Regensburg and Bellette Regensburg or their estates, as a result of the decision of the Commissioner of Internal Revenue in 1942, are the same tax liabilities which the plaintiff is seeking to collect in these suits. Notices of liens for such taxes were filed by the Government on January 17, 1945. At the time of Isaac's death, on December 1, 1943, the accumulated amount of his withdrawals from the company in excess of the amounts accrued to his account was $1,700,610.87. At the end of 1943 the amount of withdrawals by Bellette amounted to $317,719.45. He died on February 17, 1944. It was only after the deaths of Isaac and Bellette that the corporation made demand for the re-payment of the foregoing sums on the theory that they constituted loans. In 1947 and 1948 the corporation foreclosed its alleged liens on the shares of stock held by their respective estates, and the corporation bid in the stock of Isaac for the sum of $275,000 and that of Bellette for $110,000, and applied the purchase price in partial discharge of the alleged indebtedness of those two estates.

Section 3670 of the Internal Revenue Code, 26 U.S.C.A. § 3670, provides that upon failure to pay taxes after demand a lien shall arise in favor of the United States, "upon all property and rights to property, whether real or personal, belonging to [the delinquent taxpayer]."

The question to determine is: What rights to the stock acquired by the corporation, formerly in the name of Isaac and Bellette Regensburg or their estates, did the corporation have on the date that the Government filed its tax liens?

As was said by Judge Swan in Regensburg v. Commissioner, supra [144 F.2d 44], at least for the tax years 1936 to 1940 inclusive:

"That the withdrawals were recorded on the corporate books as debits against the taxpayers; that they were not proportionate to holdings of stock nor participated in by all the shareholders; and that the formalities of a dividend declaration were lacking is not conclusive against a finding that the withdrawals were dividends", citing Chattanooga Savings Bank v. Brewer, 6 Cir., 17 F.2d 79, certiorari denied 274 U.S. 751, 47 S.Ct. 764, 71 L.Ed. 1332.

In respect to the contention made in the earlier case, and repeated here, that the payments were loans and should not be classified as dividends, it is significant that no note was ever executed to evidence any indebtedness on the part of the shareholders, and no interest was ever paid or accrued on the balances shown in their accounts.

If the sums that had been withdrawn from this family corporation by the stockholders were dividends and not loans, then the corporation could not acquire the shares of stock of Isaac and Bellette, because they were not indebted to the corporation. Nor are the defendants aided by New York State law. Such cases as People ex rel. Fox Film Corp. v. Loughman, 259 N.Y. 30, 180 N.E. 885; Calder v. Graves, 261 App.Div. 90, 24 N.Y.S.2d 797, affirmed 286 N.Y. 643, 36 N.E.2d 688; and Groh's Sons v. Groh, 80 App.Div. 85, 80 N.Y.S. 438, all sustain the principle of law that if the sums in question were withdrawn with the acquiescence of all the stockholders and without any insistence that they be repaid, they must be regarded, in New York law, as dividends, and not as loans. Nor is the appellant helped by Joseph Ellner Co. v. Isaacson, Sup., 165 N.Y.S. 942, or Famous Realty, Inc., v. Frindel, Sup., 135 N.Y.S.2d 261.

The Government's liens, under Section 3672 of the Internal Revenue Code, 26 U.S.C.A. § 3672, accordingly must prevail over the underlying pledge agree-

ment of 1934, because that agreement was not supported by a valid loan.

The evidence supports the district court's conclusion, which is on all fours with the holding in Regensburg v. Commissioner, supra, that the withdrawals were in fact of earnings. Even the payment by the estate of one brother, Jerome, of the alleged overdraft due from him goes only to the weight of the evidence. This occurred after the institution of the Government's actions, and little if any weight should be attached to that circumstance.

The judgments are affirmed.