Richard D. Simons, J.
This is a motion pursuant to CPLR 3211 (subd. [a], par. 7) made by the defendants to dismiss the complaint as to each of them for failure to state a cause of action.
The plaintiff sues derivately on behalf of itself and other similarly situated shareholders of the defendant Channel 9, Syracuse, Inc. Plaintiff is and has been since September, 1962 the owner of 15 shares of the defendant corporation representing 12%% of the outstanding common stock.
Prior to February, 1962 applications were filed with the Federal Communications Commission for a construction permit for a new commercial television station to be operated on Channel 9, Syracuse, New York by 10 applicants: Onondaga Broadcasting, Inc., WRGr Baker Radio & Television Corp., Syracuse Civic Television Association, Inc., Six Nations Television Corporation, George B. Hollingbery, Veterans Broadcasting, Inc., Ivy Broadcasting Company, Inc., WAGE, Inc., Salt City Broadcasting Corporation and the plaintiff corporation.
*190 It was mutually agreed among these 10 parties that an application would be made for a special temporary authorization or an interim grant for construction of Channel 9 until such time as a successful applicant should be determined. Accordingly, on February 26, 1962 the defendant corporation was incorporated for the purpose of receiving the temporary authorization. All of the named applicants entered into an agreement to participate jointly in a temporary permit and became equal shareholders in the defendant corporation. Subsequently, the temporary authorization was granted to the defendant Channel 9, Syracuse, Inc. and it has continuously operated television station WNYS, Channel 9, Syracuse, New York since September, 1962. Veterans Broadcasting Company and Ivy Broadcasting, Inc. have withdrawn their applications and are no longer stockholders of the corporation. The eight remaining parties hold equal shares in the corporation and each is represented by a director on the board of directors. On January 22, 1965 a final award was made by F. C. C. to WB'Gr Baker Badio & Television Corp. A rehearing was scheduled for June 17, 1965 and subsequently seven of the eight applicants agreed to an arrangement whereby five of them would form a new corporation to apply to F. C. C. for the permanent permit. The other two who were in agreement with the plan sold their interests to the five remaining participants. Plaintiff is the eighth applicant and he did not join the new corporation or agree to sell out.
The individual defendants Dolan, Markson and Eagan were at all times mentioned and still are directors of the defendant corporation, each representing one of the corporate stockholders. Defendant Dolan represents WBG- Baker Badio & Television Corp. and served as treasurer of the defendant corporation from 1963-1965, as vice-president from 1965-1966 and as president from February 28, 1966 to the present time. Defendant Mark-son represents Onondaga Broadcasting, Inc. and has been treasurer of the defendant corporation since 1965. Defendant Eagan represents Salt City Broadcasting Corp. on the board of directors of defendant corporation. These three were also members of the executive committee appointed by meeting of the board of directors November 13, 1962. The defendant Floyd Smith was business manager and the defendant Jeff B. Davidson was program director of the defendant corporation at all times mentioned.
It is alleged by the plaintiff that at certain times prior to the inception of this lawsuit, the individual defendants and the former president of the corporation, now deceased, wrongfully failed to perform their duties in certain enumerated instances *191 as directors, members of the executive committee and officers of the corporation and each was so negligent and careless that the funds and property of the corporation were squandered, mismanaged and wasted resulting in loss to the shareholders of the corporation of approximately $200,000.
Plaintiff alleges that it duly demanded that the corporation take appropriate action to recover the losses and that the corporation has failed and refused to act. It subsequently instituted this action.
The defendants move to dismiss this complaint on the grounds:
1. No demand for action was made upon the stockholders of the corporation.
2. That the demand on the board of directors for corporate action was insufficient in that it (a) did not allege sufficient facts upon which the directors could intelligently act and did not urge specific action by the board, (b) gave the directors no time to investigate or act before plaintiff commenced its suit and (c) did not advise the board of the consequences of its failure to act, i.e., derivative litigation.
3. That the corporation did not refuse to act.
4. That the absence of action was the exercise of sound business judgment and not bad faith or negligence resulting from a breach of duty as officers and directors.
5. Plaintiff is attempting to hold the defendants Dolan, Mark-son and Eagan to a higher standard of care by reason of their membership on the so-called “ Executive Committee ” which in fact and in law did not exist, and
6. That no cause of action is stated against defendants Smith and Davidson.
The dispute centers largely around allegedly excessive and improper salaries paid employees, excessive travel and entertainment expenses and so-called ‘ ‘ trade deals. ” “ Trade deals ’ ’ are arrangements whereby advertising time is exchanged for merchandise or services of the advertiser. It is claimed that the advertising time given was worth far more than the consideration received and that the articles and services received were used by officers and employees of the corporation for their personal benefit rather than the benefit of the corporation.
As early as March 18, 1965, Mr. Henry T. Wilcox, the board member of defendant corporation representing plaintiff, addressed letters to defendants Markson, Dolan and Eagan which were read at the meeting of the board of directors questioning and criticizing the trade deals and whether they were properly made and accounted for. The board of directors directed the executive committee to investigate. Inquiries were *192 made of counsel and assurances received that the general practice was satisfactory. The corporation’s tax returns were accepted by the Internal Revenue Service (presumably approving the accounting practices) and so nothing further was done by the executive committee. No specific answers were determined with respect to possible misappropriations or mismanagement of the “ trade deals ” as plaintiff requested and no report was made to the board of directors. On May 10, 1965 at a board meeting the matter was again discussed at the urging of Wilcox. No action was taken.
On January 18, 1966 plaintiff commenced a proceeding to compel inspection of the corporate books. That proceeding was discontinued January 26, 1966 on stipulation that the books would be made available and a certified public accountant retained by plaintiff examined the books at defendant corporation’s office. Plaintiff’s accountant allegedly discovered evidence of expenditures for noncorporate purposes reflected by the checking accounts, check lists and cancelled checks. The audit also allegedly discovered evidence of improper trade deals and diversion of the merchandise received for noncorporate purposes.
On April 5, 1966 plaintiff mailed a letter to each director demanding that the board of directors of the corporation take action against 1. defendants Dolan, Markson and Eagan, 2. William H. Grumbles, then president of the defendant corporation and now deceased and defendant Smith, and 3. on the fidelity bond to recover alleged losses of the corporation. That motion was made and failed for lack of a second at the meeting held on April 14,1966.
On April 20, 1966 this action was commenced. On April 22, 1966 the board of directors passed a resolution authorizing an investigation and additional audit of the books of the corporation.
The action is brought under section 720 of the Business Corporation Law to require defendants to account for their official duties in the management of the corporation. It is derivative in nature. (Business Corporation Law, § 626.) The cause of action belongs to the corporation. (Hawes v. Oakland, 104 U. S. 450; Alexander v. Donohoe 143 N. Y. 203.) The shareholder sues not in his own right but in the right of the corporation. The wrongs it complains of are not wrongs to it personally but the corporation. The shareholder is authorized to act when the corporation fails to act and therefore it is incumbent upon plaintiff to allege with particularity its efforts to secure initiation of the action by the board of directors or the reason *193 for not making such effort. (Business Corporation Law § 626, subd. [c].) Under the decision of Continental Securities Co. v. Belmont (206 N. Y. 7) these prior efforts may include a demand upon the shareholders that they act as a condition precedent to maintaining the derivative suit.
It is a general rule that the judicial process will not be invoked to control the business methods of a company. It is the argument of the defendant corporation, relying on Continental Securities Co. v. Belmont (supra), that this action is premature absent a demand upon the shareholders to bring the action since the acts complained of are of the nature which can be ratified by the body of shareholders. For the purposes of this motion, it will be assumed that the acts complained of could be ratified by the shareholders. The Court of Appeals, speaking in the Continental Securities case stated (p. 19): “If the subject-matter of the stockholder’s complaint is for any reason within the immediate control, direction or power of confirmation of the body of stockholders, it should be brought to the attention of such shareholders for action, before the action is commenced by a stockholder unless it clearly appears by the complaint that such application is useless.”
Section 626 (subd. [c]) of the Business Corporation Law, effective September 1, 1963 is a new section. It was derived from subdivision (b) of rule 23 of the Rules of Civil Procedure which contains the requirement of a prior demand on shareholders. That language was omitted from our statute.
It is noteworthy that when the bill containing section 626 of the Business Corporation Law was originally introduced in the Legislature, it contained in subdivision (e) the requirement that a demand be made on shareholders but that requirement was removed because it was considered too onerous. (Cf. 11 Buffalo L. Rev. 496, 505-505.) However, even in the proposed bill before amendment, the demand was required only ‘‘ if necessary ’ ’, presumably meaning if necessary under the law of the State, i.e., Continental Securities Co. v. Belmont (supra). So even in its proposed form, the demand upon shareholders was not required in all events. The omission of the requirement of a demand on shareholders contained in the proposed bill is determinative that the Legislature no longer intended to impose such a condition on a litigating shareholder. In a case such as this where the demand was presented to the full board of directors each representing and designated by a stockholder, it is apparent that even under the old rule of Continental Securities Co. v. Belmont (supra), it would be an unnecessary and fruitless task *194 to require the complaining shareholder to go heyond that and make a demand upon individual corporate shareholders.
Next, the argument of the defendants is directed to the sufficiency of the demand in various respects. Subdivision (c) of section 626 of the Business Corporation Law sets forth no specific form for a demand. A demand need not assume any particular form or recite any specific language. (Ripley v. International Rys. of Cent. America, 8 A D 2d 310, 317, affd. 8 N Y 2d 430.) It may even be inferred from the discussions taking place during conferences. (Ripley v. International Rys. of Cent. America, supra.) In this case, plaintiff submitted to each director on April 5, 1966 together with a notice of meeting of the board of directors called for April 14,1966, an eight-page written memorandum detailing the history of its complaints, specific demands for corporate action against the individual defendants and a demand for action to recover for the losses sustained on the fidelity bond. The memo itemized the grounds for the demand with particularity and advised that in the absence of corporate action plaintiff would proceed to protect its rights. Surely, no more was required.
Not only must the plaintiff make a demand on the corporation prior to commencing the derivative action (unless such demand is futile) but the demand must be met by a wrongful refusal not justified by the exercise of reasonable discretion by the directors. (Koral v. Savory, Inc., 276 N. Y. 215; Ripley v. International Rys. of Cent. America, supra.) The failure to sue must be the result of a breach of duty on the part of the board of directors, not merely an error of judgment. (Koral v. Savory, Inc., supra; J. C. F. Holding Corp. v. General Gas & Elec. Corp., 181 Misc. 283, affd. 267 App. Div. 863.) The refusal may be implied by the actions of the board. (Kavanaugh v. Commonwealth Trust Co., 45 Misc. 295, affd. 103 App. Div. 95.)
At the April 14, 1966 meeting, information of alleged mismanagement and waste was formally presented to the board in the form of a motion. The motion failed for want of a second. The board took none of the many actions which might be anticipated in view of the gravity of the charges. It did not direct an investigation, it did not direct an audit, it did not refer the matter to committee, it did not amend the motion, the motion was not tabled. The board of directors did nothing. The defendants could hardly have been misled as to plaintiff’s seriousness. It had pursued the matter for over a year. It had instituted one action against these defendants demanding an independent audit of the books. Sufficient was before the board of directors to apprise them of possible misconduct, yet they *195 did nothing until after this action was instituted five days later. Furthermore, as early as February 28, 1966 defendants were advised by their own auditors about unauthorized expenditures reflected in the accounts. Even this information did not move the directors to action to review the financial organization of the corporation.
While it is not clear whether or not the defendant corporation is in the legal control of the alleged wrongdoers, thereby obviating the necessity of a demand and refusal (Jacobson v. Brooklyn Lbr. Co., 184 N. Y. 152) it is shown that the board was controlled by directors nominated by five corporations who were to take over the TV station to the exclusion of plaintiff. Furthermore, three of the board members were personally charged with violations of their corporate duties. Plaintiff had been inquisitive and critical of suspected wrongdoing for over a year and the board of directors had shown a total indisposition to act. It can hardly be argued that the board members exercised their sound business judgment by refusing to even consider the motion. Sufficient is alleged in the papers for the purpose of this motion to infer that the demand was refused and that the refusal was not a mere error of judgment.
It is alleged that the plaintiff seeks to hold defendants Dolan, Markson and Eagan to a higher duty than other directors because of their membership on the so-called executive or advisory committee.
The history of the executive committee originates from a meeting of the directors November 13, 1962 when a resolution was adopted creating the committee for the purpose of acting as “ a sounding Board” to assist and advise the president between regular meetings of the board. On December 17, 1962 a motion was passed directing that the executive committee receive periodic lists of corporate checks to be signed for their “information and approval.” They also were requested to check travel expenses and expense accounts of employees and on April 15, 1965, they were directed to investigate the ‘ ‘ trade deals.” Further, on November 17, 1965 it was affirmed that the purpose of the executive committee was to work with management between board meetings, to investigate and “digest” problems not readily understandable by the full board and make recommendations.
Section 712 of the Business Corporation Law provides that if the certificate of incorporation or the by-laws so provide, the board of directors may appoint an executive committee authorized to act in lieu of the full board in certain respects. This section was first enacted in 1963 prior to the formation of the *196 committee involved in this suit. Neither the certificate of incorporation nor by-laws of the defendant corporation authorizes the formation of an executive committee or the delegation of authority to such committee by the board of directors.
By whatever name called, this action of the board was a delegation of its authority to some of its members. Prior to 1963, section 28 of the General Corporation Law provided action taken by the board of directors may be executed on behalf of the corporation by such officers as are delegated by the board. Section 60 of the Stock Corporation Law authorized delegation of authority by the board of directors. Aside from that statute, there was implied authority in the directors to delegate their powers to the extent shown here (Hoyt v. Thompson’s Executor, 19 N. Y. 207; Olcott v. Tioga Ry. Co., 27 N. Y. 546; First Nat. Bank of Binghamton v. Commercial Travelers’ Home Assn. of America, 108 App. Div.-78, affd. 185 N. Y. 575) and this was so even though the by-laws did not expressly authorize the delegation. (Sheridan Elec. Light Co. v. Chatham Nat. Bank, 127 N. Y. 517; 25 Albany L. Rev. 93.)
Directors and officers are charged with the duty of discharging their corporate responsibilities in good faith and with that degree of diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions. (Business Corp. Law, § 717.)
Care and skill in management are relative concepts depending not only on the type of corporation, the circumstances involved, but also the corporate role of the directors. (Cf. 11 Buffalo L. Rev. 496, 546-558.) The duty is measured by all the circumstances. (12 N. Y. Jur., Corporations, § 867.) The fact that the board delegated certain responsibilities to defendants Dolan, Marks on and Eagan as an executive or advisory committee, and they acted as such, is a fact to be considered along with all others present in the case to determine the knowledge they had of the corporation’s affairs and possible mismanagement of those affairs. A director is charged with knowledge he actually possessed or which he might have possessed had he diligently pursued his duties. (Cassidy v. Uhlmann, 170 N. Y. 505; 12 N. Y. Jur., Corporations, §§ 868, 871.) This is so regardless of whether the executive or advisory committee was de jure, de facto or a nullity. The argument that it was created without specific authority is irrelevant. The fact that it was created and these three defendants served on it and assumed to themselves certain powers and authority by reason of their membership on it is a measure of their responsibility. They are not charged as nonparticipating directors with acts of mismanage *197 ment of their appointees to* an executive committee. They are charged with their own alleged derelictions. In other words, their duty is to be measured by what prudent men would do in similar circumstances being in possession not only of the knowledge and information they possessed or could have possessed by diligent attention to all their duties not only as directors and officers, but also as members of the executive committee. Having injected themselves into the more detailed management of the corporation and thereby acquired additional knowledge, they are charged with that knowledge in judging their conduct. (Warner v. Penoyer, 91 F. 587 [C. C. A. 2d].) Their responsibility encompasses matters passed upon by the committee and as committee members and because of that participation, the diligence required of them was greater and the liability stricter. (Kavanaugh v. Gould, 147 App. Div. 281, 290.)
The action proceeds against the defendants Smith and Davidson primarily on the basis that they received “ large and improvident” salary increases from the executive committee which the corporation could ill afford and also on the basis that they personally benefitted by the use of services received in exchange for advertising in “trade deals”.
Smith -and Davidson were not officers of the defendant corporation. (Business Corporation Law, § 715; By-Laws, art. III.) Neither were they directors. No cause of action is stated against them for mismanagement of the corporate affairs under section 720 of the Business Corporation Law. An action may lie against them to recover excessive salaries or enjoin future excessive salary payments, or for knowingly receiving corporate assets for their personal use and they may be joined in this action. (Business Corporation Law, § 720, subd. [a], par. [2]; Katz v. Braz, 188 Misc. 581, affd. 271 App. Div. 970; Sherwood v. Holbrook, 98 Misc. 668, 163 N. Y. S. 326, affd. 178 App. Div. 462; 12 N. Y. Jur., Corporations, §§ 926, 979.)
The further objection is made that no demand was made of the defendant corporation specifically requesting action against Davidson. The demand referred to “ appropriate action against any and all persons appearing to be responsible for loss or waste or diversion iof the corporation’s assets for non-corporate purposes.” The use by Davidson of $1,293.73 of American Airlines tickets belonging to the corporation for his personal benefit is specifically alleged in the demand dated April 5, 1966 and submitted to the board of directors for action April 14, 1966. This is sufficient. (Ripley v. International Rys. of Cent. America, supra.) All motions denied.