## BARNES *v.* SPENCER & BARNES CO.

1. CORPORATIONS—DIVIDENDS—FORMALITY OF DETERMINATION TO DISTRIBUTE PROFITS.

     Stockholders of a corporation may informally agree to distribute a certain sum as dividends without going through the form of corporate action, or without action of the board of directors.

2. SAME—PROFITS—DIVIDENDS.

     A division of profits is a dividend, even though not called or considered such by directors or stockholders.

3. SAME—BILLS AND NOTES—DENIAL OF EXECUTION.

     Failing to deny the execution of a corporate note, made by the president of the association without express authority, permits the introduction of the note in evidence; whereupon it makes a *prima facie* case.

4. SAME—NEGOTIABLE INSTRUMENTS—AUTHORITY OF CORPORATE OFFICER—RATIFICATION.

A promissory note executed in the corporate name by its president, to himself, for the price of timber sold by him to the corporation, is valid in the absence of evidence that the price was unfair, and especially upon proof that the directors knew of the transaction, never repudiated the note, and the corporation credited the amount of the purchase price on its books, in his name.

5. SAME — DEALING BETWEEN OFFICERS AND CORPORATION — FIDUCIARY RELATION.

A corporate officer may deal with the corporation if his acts are open and fair and known to the directors and stockholders.

6. EQUITY—SET-OFF—ACCOUNTING.

Under a plea of the general issue and notice that the defendant purposes to file a bill for an accounting of plaintiff's acts as corporate president, asking that the amount, when so determined, may be set off against any amount due upon notes involved in the action at law, the defendant's remedy is in equity.

Error to Berrien; Coolidge, J.  Submitted April 6, 1910.  (Docket No. 10.)  Decided September 27, 1910.

Assumpsit by John E. Barnes against the Spencer & Barnes Company for money had and received.  A judgment for plaintiff on a verdict directed by the court is reviewed by defendant on writ of error.  Affirmed.

*Gore & Harvey*, for appellant.

*M. L. Howell* and *Humphrey S. Gray*, for appellee.

MOORE, J.  The plaintiff sued defendant in an action of trespass on the case upon promises, and gave notice that upon the trial under the money counts he would give in evidence certain notes.  One of them was for $1,000, payable to Mrs. J. E. Barnes, guardian, etc., and was dated July 1, 1903.  It had on the back of it the indorsement:

" Pay to the order of J. E. Barnes, Mrs. J. E. Barnes, guardian."

It also had 11 indorsements showing the interest had been paid up to July 1, 1908, and 9 indorsements showing payments upon the principal. One of the notes was for $5,000, dated January 1, 1904, payable to the order of J. E. Barnes, and had many indorsements showing upwards of $1,200 paid upon the principal, and many indorsements showing payment of interest up to July 1, 1908. There was another note for $3,000 and two notes for $2,000 each. All of these notes were signed: "The Spencer & Barnes Company, by J. E. Barnes, President." Each note had many indorsements showing payments upon the principal, and many indorsements showing payments of the interest up to July 1, 1908.

The defendant did not deny under oath the execution of any of these notes. It pleaded the general issue, and gave notice of several defenses, one of which was to the effect that when the notes were given the payee was president of the company, under a large salary, and owed all his services to the company; that he engaged in outside business under the firm name of Barnes & Robinson, which firm dealt with defendant company. We quote from the plea and notice:

"That by virtue of such sales the said John E. Barnes realized large profits which said Barnes then and there converted to his own use, and which said sums of money the defendant avers lawfully and of right belonged to the defendant, and which said amounts the plaintiff has refused to pay over and account for to the defendant, though the same have often been demanded of plaintiff.

"The defendant avers that by virtue of such manipulation and by reason of plaintiff's interest in said contracts with the Spencer & Barnes Company, that the said plaintiff, John E. Barnes, has realized large profits on said contracts, amounting to the sum of $10,000, and said profits lawfully and of right belong to said defendant. That no part thereof has been paid by plaintiff to the defendant, though often requested so to do, and thereby the plaintiff became and is indebted to the defendant in the sum of $10,000.

"That said John E. Barnes, in violation of his contract

obligations to the defendant, as aforesaid, whose president and financial manager he was, made several purchases of timber and timbered lands for his own account and not for the account of the Spencer & Barnes Company, as he was under contract and legally bound to do. That said plaintiff, John E. Barnes, scheming and designing to deprive the defendant of its just share of the profits in said purchases of timber and timber lands, entered into a copartnership with one John Robinson under the firm name and style of 'Barnes & Robinson,' and also under the name of the 'Weesaw Lumber Company, John E. Barnes, Manager,' for the purpose of purchasing large tracts of timbered lands located in the county of Berrien, and for the cutting of the timber thereon and the sale thereof upon the market. * * * Said John E. Barnes realized large profits therefrom, the exact amount whereof is unknown to defendant, but defendant avers that from such sales the plaintiff reaped large profits, to wit, the sum of $10,000. That said profits justly and legally belonged, and do now belong, to the defendant, and, although often requested, the plaintiff has refused and neglected, and still refuses and neglects, to pay the same, or any part thereof, to the defendant."

Notice was given of the following:

"That said defendant will insist that said notes and each thereof are null and void.

"That defendant will insist that said notes, and each thereof, are void because each of said notes was made, executed, and delivered by said plaintiff to himself or to others for his benefit, while president of the Spencer & Barnes Company, defendant, without authority so to do.

"Defendant will show in evidence that there has been no ratification by the stockholders of the making, execution, and delivery of said notes by the plaintiff, as president of the Spencer & Barnes Company, to himself."

The plea ended with the following statement:

"You will further take notice that, pursuant to Circuit Court Rule 24c, the defendant hereby waives the benefit of the general issue, and admits the facts alleged in the plaintiff's declaration (that is to say, defendant admits that, except for the facts set forth in this notice, the plaintiff would be entitled to recover upon the promissory notes set forth in the declaration herein, and waives the neces-

sity of the introduction of said notes in evidence for the purpose of proving the signatures thereon and the delivery thereof, and waives the necessity of the computation of the amount due thereon), and, hereby relying on the defense herein set forth, this defendant claims the benefit of said Rule 24 in respect to the opening and closing in the taking of testimony and in the argument on the trial of said cause."

Upon the trial the notes were introduced in evidence, and many witnesses were sworn on the part of the defendant. At the close of the testimony, after hearing arguments of counsel, the circuit judge expressed himself as of the opinion that the defense of invalidity of the notes and of offset could not be urged in an action at law. He said:

"In this suit, gentlemen, Mr. Barnes is a party on one side and the corporation on the other, and the stockholders are not made parties. I hold equal justice could not be done unless all the stockholders are brought in, and I also hold that so far as offsets are claimed in this case they are matters for a court of chancery for similar reasons, and therefore the plaintiff as far as this action is concerned is entitled to judgment upon the notes.

"A court of chancery may hereafter determine as to what offsets will be allowed to the corporation, and perhaps determine what remedies may exist between the various stockholders of this company. Therefore, as a matter of law, I have come to the conclusion that the plaintiff is entitled to a judgment upon those notes, and that there is no legal defense whatever to the notes. The amount of those notes has been computed and amounts to $20,841.83."

He directed a verdict for the above amount. The case is brought here by writ of error.

The important alleged errors relied upon are stated by counsel as follows:

"(1) The court erred in sustaining the validity of all the notes sued on (except the note, dated July 1, 1903, for $1,000), because each thereof was given without consideration, without authority of the directors, and because the

162 MICH.—33.

plaintiff as president of the corporation, without specific authority so to do, made the notes to himself as payee.

"(2) The validity of the notes dated January 1, 1904, for $5,000 each, are assailed as invalid because each thereof is without consideration and each thereof purports to be a contract between the plaintiff as president of the defendant corporation and himself as payee; and because there is no authority in the charter, by-laws, or elsewhere for making said notes and no attempted ratification thereof by the directors or stockholders.

"(3) The court erred in permitting a recovery upon the two notes for $2,000 each, dated July 1, 1905, wherein Z. Dotte Waite, guardian, etc., and Z. Dotte Waite, the plaintiff's daughter, is payee, because it conclusively appears there was no consideration for such notes; that said notes were wholly unauthorized and *ultra vires.*

"(4) The note for $2,000 dated July 22, 1905, is void because it is shown by undisputed proof to have been given by the plaintiff to himself on account of the sale of certain logs belonging to plaintiff at Union Pier, Mich., and sold by plaintiff to himself as president of the defendant company. No other officer or person was a party either to the contract of sale or the promissory note in question.

"(5) The note for $3,000 dated December 1, 1903, wherein plaintiff is both payee and maker, is void. It is wholly unauthorized and without consideration. The only action taken by the directors during the year 1903, referring to dividends, was that all small stockholders be paid the amount of dividends due, 20.2 per cent.

"(6) The fiduciary relation of the plaintiff to the defendant is involved. He was its president and was paid by it for his time and services, and it was his duty to purchase timber, logs, lumber, and timbered lands for and on account of the defendant, and his embarking, against the protest of the other officers, in such enterprises for his individual profit at the expense of the company whose president he was, and in violation of his trust relation and contract of employment, renders the profits so earned and held by him as money had and received for the defendant's benefit. The court erred in ruling that said moneys could not be recovered by the defendant in this suit."

Counsel are agreed upon the following:

"Upon the organization of this company there was

issued 2,000 shares of preferred stock to B. H. Spencer and 2,000 shares of preferred stock to John E. Barnes; and 1,340 shares of common stock issued to John E. Barnes, and 50 shares of common stock issued to Z. Dotte Ortland, daughter of John E. Barnes.   There was issued to B. H. Spencer 1,370 shares of common stock and to his daughter, Mary L. Spencer, 20 shares of common stock, making a total stock issue at par of $67,800.   It is thus seen that the stock in this company was owned by these two families, B. H. Spencer and John E. Barnes.   Later stock was transferred by B. H. Spencer to other members of his family.   In 1899 Frank T. Plimpton became a stockholder in the company, and he has continued as such ever since.

"From the organization of the company in 1896 until 1903 the amount of the stock owned by B. H. Spencer and the members of his family was exactly equal to the amount of stock owned by John E. Barnes and the members of his family.   During all this time John E. Barnes was president of the company and as such exercised the powers and performed the duties laid down in the by-laws, and B. H. Spencer was vice president and superintendent and as such exercised the powers and performed the duties provided in the by-laws except as hereinbefore stated.   The same board of directors served the company from its organization in 1896 to 1907.   These directors were John E. Barnes, B. H. Spencer, and Mary L. Spencer.   The latter was secretary and treasurer of the company.   She was also head bookkeeper of the company. The business was apparently conducted with little regard for the by-laws."

The purpose of the corporation is stated in its articles to be "the manufacture of various kinds of furniture from wood, iron, or brass, as the demands may require."   The preferred stock drew a fixed dividend of 6 per cent.   The by-laws provided that the president should have full charge of all the offices and business and should sign all drafts, notes, checks, and contracts and all papers pertaining to the business of the company wherein there was a money consideration making the company liable.   They also contained the following provisions:

"The dividends shall be declared on the first day of

March after the annual inventory. All profits shall be divided with the preferred stockholders up to six per cent., and the remainder with the preferred and common stockholders share and share alike and shall be paid within sixty days thereafter."

An annual meeting was held each year. A yearly inventory was taken, and a statement made showing resources and liabilities, and also showing whether the business had been profitable or unprofitable. The action was sometimes somewhat informal as to the declaration of dividends, but there were some entries made upon the books in relation thereto. At the annual stockholders' meeting February 2, 1899, the following action was taken:

" It was moved and carried that small stockholders be paid the 5.8 per cent. which is the per cent. of gain after preferred stockholders' 6 per cent. is deducted from whole gain."

At the stockholders' meeting of January 23, 1900, the following appears upon the minutes, to wit:

"Moved that all stockholders except B. H. Spencer and J. E. Barnes be paid in full 25.35 per cent. which is per cent. after 6 per cent. on preferred stock has been deducted and as all stockholders except B. H. Spencer and J. E. Barnes have always been paid in full the balance is to be divided equally between them, and to be drawn out as business will allow. Motion was carried."

At the annual meeting of directors for 1901 the following appears:

" It was moved that surplus on account of B. H. Spencer and J. E. Barnes be taken up by notes with interest at 4 per cent. per annum from January 1st, 1901, interest payable quarterly. Motion carried. It was then moved that $4,000 of undivided profits be set aside for building account and balance, $3,064.24, be paid in dividends as provided by by-laws. Motion was carried."

At the annual meeting of the stockholders February 3, 1902, the following appears:

" Moved by J. E. Barnes and supported by B. H. Spen-

cer that the notes held by B. H. Spencer and J. E. Barnes bearing 4 per cent. be taken up and new notes be given drawing 6 per cent. interest per annum, payable quarterly. Motion carried. It was then moved that small stockholders be paid 14.11 per cent. dividends in full and large stockholders be given notes, bearing 6 per cent. interest per annum, interest payable quarterly. Motion was carried."

At the annual meeting of the directors January 20, 1903, the following appears:

"It was moved by J. E. Barnes that all small stockholders be paid the amount of dividends due, 20.2 per cent. Motion carried."

At the annual meeting of the directors January 30, 1904, the following appears:

"Moved by J. E. Barnes and supported by B. H. Spencer that small stockholders, Irven Spencer and W. S. Waite, be paid as soon as convenient and that notes be made for J. E. Barnes and B. H. Spencer as in previous years. Motion carried."

At the annual meeting of the directors January 16, 1905, the following appears:

"Moved by M. L. Spencer that stockholders be paid dividends due and that Irven Spencer and W. S. Waite be paid five (5) per cent. of the net profits of 1904 as. per agreement as soon as convenient. Supported by B. H. Spencer and carried."

At the annual meeting of the directors January 24, 1907, the following appears:

"It was then moved that stockholders be paid their share of profits on or before March 1, 1907. Motion carried."

The record is clear that the stockholders and directors were fully advised as to what was done. From time to time the small stockholders were paid dividends in cash. The profits were often shown to be in the form of accounts, notes, and merchandise. Mr. B. H. Spencer and the plaintiff owned the great bulk of the stock, and, instead

of being paid cash, as were the smaller stockholders, they were credited the amount of the dividends due them upon the books of the company, or notes were given to them for these amounts.

The record indicates pretty clearly that no one thought that there was anything irregular about the method of making dividends or of paying them. Miss Spencer, who was secretary and treasurer of the company and the daughter of B. H. Spencer, vice president and superintendent of the company, and the two constituting a majority of the directors, testified that not until August, 1907, did she have any knowledge—

"As to what legal authority the president of a manufacturing corporation like Mr. Barnes had in the manner and matter of drawing promissory notes. I was not informed in regard to the limitations upon that power until after this suit was commenced. I did not have knowledge until after this suit was commenced as to the power or authority of an officer of the company to execute and deliver so-called dividend notes."

On the cross-examination she testified:

"The books of the Spencer & Barnes Company show that interest was paid on these notes. It is regularly entered upon the books. The interest indorsed upon these notes was entered upon the books of the company. Witness wrote some of the notes and made indorsement for interest on some."

Witness' attention was called to $5,000 note, January 1, 1904, and she testifies that was given for a dividend.

"*Q.* Did you and all the other stockholders of the company receive the same percentage of dividend that those notes were on the stock held by Barnes; that is, were the dividends equal in per cent. of the stock—I mean all the common stock?

"*A.* Yes, sir; the common stock all got the same dividend, and the preferred stock all got the same dividend. At the time Mr. Barnes got those two $5,000 notes, my father got two $5,000 notes. They did not hold the same amount of stock at this time, Mr. Spencer had some more. It might have been 60 shares more; it might not have

been that much. He had a majority of the stock at that time. He got the same percentage on the stock that Barnes did. His notes were canceled and stock issued to him for them. I would not be positive these were the notes for which stock was issued. His notes were all taken up in this manner by the company, except one note of $1,200. He has received all but $1,200 of the dividends. The other stockholders have all been paid except Mr. Barnes."

The indorsements on the $5,000 note were identified by witness as all in her handwriting, with the exception of one made by the assistant bookkeeper, Mrs. Clark. Exhibit 3, indorsements made of interest by Mrs. Clark, Mr. Belding, a clerk in the office, and some by the witness. Exhibit 3 was a dividend note. It is dated December 1, 1903.

"*Q.* That was given for a dividend declared about that time?

"*A.* No, sir.

"*Q.* For what was it given?

"*A.* Part of a dividend note of, I think, $7,000, and $4,000 was paid. $3,000 was the renewal of the note.

"*Q.* The other stockholders got the same per cent. of dividends that went into this note; that is, the common stockholders got the same per cent. with each other and the preferred stockholders got the same per cent. with each other?

"*A.* Yes, sir; that is, the common stockholders shared with the preferred stockholders after the 6 per cent.

"*Q.* As far as you were concerned, those dividends were voted in good faith, all of them, were they not?

"*Mr. Gore:* That is assuming that they were voted. One of our claims is that they were not voted, and the record don't show the authority for it. (Objection overruled. To which ruling of the court the defendant by its counsel duly excepted.)

"*The Court:* To the witness: Did you understand the question?

"*A.* Yes, sir; he asked about voting on the question. I do not think the records of the meeting would say that we did vote on the question.

"*Q.* The dividends you say that were declared and the notes that were issued, was that done in good faith?

"*Mr. Gore:* That assumes what the witness has not said. She has not said dividends were declared.

(Last question read.)

"*The Witness:* There is no record of the dividends being declared; but, as far as my action is concerned in writing out the notes, it was in good faith. The records that I kept of the minutes showing the earnings of the company, its assets and liabilities, are correctly shown, and correctly show the profits that appeared by the books to have been made.

"*Q.* So that when they did show that the profit, or so much remained, that was believed to be so in every case, was it not?

"*A.* Yes, sir. At the time this $3,000 note dated December 1, 1903, was given, my father had a majority of the stock; I can't tell how much either one of them had. The books show that. Notes were issued to my father and to Mr. Barnes at the same time; whenever one got a note the other got one. This was always so, and each for the proportion of the dividend due him according to the computation."

Though the record does not show that as formal action was taken as would be shown by the records of a carefully conducted corporation, we think it cannot be said that dividends were not authorized and declared. · It must be remembered that no question of the right of creditors is involved. See 2 Cook on Corporations (6th Ed.), § 534; *Hartley* v. *Pioneer Iron Works,* 181 N. Y. 73 (73 N. E. 576); *Rorke* v. *Thomas,* 56 N. Y. 559; *Reading Trust Co.* v. *Reading Iron Works,* 137 Pa. 282 (21 Atl. 169, 170); *McKusick* v. *Seymour, Sabin & Co.,* 48 Minn. 172 (50 N. W. 1116); *Pennsylvania Iron Works Co.* v. *Mackenzie,* 190 Mass. 61 (76 N. E. 228).

A resolution will be construed as equivalent to a declaration of a dividend where any other construction would amount to an illegal preference among the stockholders. *Redhead* v. *Iowa Nat. Bank,* 127 Iowa, 572 (103 N. W. 796).

A dividend may be legal even though not formally declared, it being paid by common consent, and hence cannot be recovered back on that ground after being actually

paid.  *Berryman* v. *Insurance Co.*, 117 App. Div. 730, 102 N. Y. Supp. 695.

The stockholders may agree among themselves informally to distribute a certain sum as dividends without going through the form of corporate action.  No formal declaration is necessary, either by the stockholders or board of directors, and a distribution of profits by a unanimous consent without corporate action is legal.  *M. Groh's Sons* v. *Groh*, 80 App. Div. (N. Y.) 85 (80 N. Y. Supp. 438).

A division of profits is a dividend, even though not called such and not considered such by the directors or stockholders.  2 Cook on Corporations (6th Ed.), § 534, p. 1445, and cases cited.  A scrip dividend is resorted to where company has profits not in cash.  *Id.* § 535.

It is impossible to read this record without reaching the conclusion that in what was done about the dividends everybody acted in good faith, believing they had been earned.  All of the stockholders have been paid upon the same ratio in proportion to the stock carried by them, except this plaintiff.  It is also clear that all the stockholders and directors knew the course of procedure and approved of it.  The other two directors knew of the giving of these notes, for what they were given, and the treasurer from time to time made payments thereon, and made indorsements thereon.  The authorities cited by counsel fail to show that notes made under the circumstances disclosed by this record were void.

As to the $2,000 note given in payment for certain logs sold by plaintiff to defendant, there is nothing in the record to indicate that they were not sold for a fair price. The other directors knew all about the transaction.  By failing to deny the execution of this note under oath, it was competent to introduce it in evidence, and when offered in evidence it *prima facie* made a case, which case has not been overcome by the defense interposed.  A time came when Mr. Spencer and his family got a controlling share of the stock.  They had control when the logs were bought for which this note was given.  Mr. Barnes was

credited on the books for the amount of these logs before the note was given.

There came a time when there was a discussion between the plaintiff and the other stockholders about his engaging in outside operations. The record would indicate that the discussion resulted in an understanding with reference to what should be done, and Mr. Barnes wrote the following letter:

"Benton Harbor, Mich., 1/14/1905.
"I, J. E. Barnes, agree that I will close up my land, log and wood matters as fast as I can without loss, and from this date will not buy any of the above except for the firm of Spencer & Barnes Company while I am an officer of said company.
[Signed]     "J. E. Barnes."

The Spencers then had a majority of the stock, but Mr. Barnes was continued as a director and the président. The record does not disclose any departure from this agreement.

It is not the law that an officer of a corporation cannot deal with the corporation if his acts are open and fair and known to the directors and stockholders. See 10 Cyc. p. 794; *Ft. Payne Rolling Mill* v. *Hill*, 174 Mass. 224 (54 N. E. 532); *Africa* v. *Duluth News-Tribune Co.*, 82 Minn. 283 (84 N. W. 1019, 83 Am. St. Rep. 424); 2 Cook on Corporations (6th Ed.), § 652; *U. S. Steel Corp.* v. *Hodge*, 64 N. J. Eq. 807 (54 Atl. 1); *Ten Eyck* v. *Railroad Co.*, 74 Mich. 226 (41 N. W. 905, 3 L. R. A. 378, 16 Am. St. Rep. 633); *Henry* v. *Benevolent Ass'n*, 147 Mich. 142 (110 N. W. 523).

At the annual meeting held in January, 1907, a full settlement, except the notes, was had with Mr. Barnes. In the statement of the affairs of the corporation appeared the notes held by Mr. Barnes and Mr. B. H. Spencer as bills payable, and, as already appears, Mr. Spencer was afterwards paid nearly all his notes. B. H. Spencer, M. L. Spencer, and Irven Spencer were elected as directors. The records of the meeting show the following:

"That the stockholders of the Spencer & Barnes Company extend their thanks to John E. Barnes, the retiring president, for the services rendered by him during the past ten years. That this resolution be spread upon the minutes of the company and a copy of the same be presented to Mr. Barnes. Carried unanimously."

These notes had been included after they were made in every annual report made to the stockholders. January 26, 1907, the following resolution was adopted:

" It was moved that whereas it was shown by the books of the company that there is an outstanding indebtedness exceeding $50,000, and whereas in view of recent changes in the management and policy of the company a larger amount of capital is necessary to properly and successfully carry on the business of this company: Now therefore be it resolved, that the president and secretary of this company be and the president and secretary hereby are authorized to sell all the unissued stock in the treasury of this company, to wit, 1,980 shares at not less than $10 per share (par value)."

Miss Spencer, the secretary, testified:

" That indebtedness referred to in the minutes of 1907, of over $50,000, included all notes in this suit on February 5, 1907."

Mr. Barnes was not a director at this time. If this record does not show knowledge and ratification of the acts of the plaintiff, it is difficult to see how a record could show them.

In relation to the matter of the set-off, in addition to what we have already said about what is contained in the notice attached to the plea, is the following:

" Defendant gives notice of its intention to file a bill of complaint in equity for the purpose of obtaining a full and complete accounting from the plaintiff of the profits made and received by him out of sales to this defendant and to other persons, firms, and corporations, during the time the said plaintiff was president of the defendant corporation and owed to it his time, services, and business ability. That this action should abate until such account-

ing between the parties is had. Wherefore, the defendant demands that the amounts due it from the plaintiff, when ascertained, be set off against the demands of the plaintiff sued upon in this action."

No such accounting had been made when the case was tried. In 10 Cyc. p. 794, in discussing the matter of profits received by an officer of a corporation, it is said the rule applies to secret and not to open profits, and as to them—

"Such contracts will be scrutinized in equity and will be set aside if not made in the utmost fairness and good faith. * * * The rule is especially applicable where, although the director received a profit out of the transaction, the contract was made in good faith, was not improvident, had been performed, and the corporation had received the benefit of its performance, under which circumstances it has been held that it could not be undone by a receiver subsequently appointed for the corporation."

It is said, at page 795:

"Rule subject to maxim that he who seeks equity must do equity. The rule under consideration does not extend so far as to work entire confiscation of the property of the unfaithful director, which he may have attempted to sell to his corporation at an advance over its cost to him, so as to derive a secret profit therefrom; but in the accounting which takes place under the principle, the director will be compelled to yield to the corporation the secret profit, but will be allowed a credit for the property sold to the corporation at its real value."

The stockholders of this corporation are practically the same as they were during all the time the plaintiff was president. All of them except the plaintiff have received and retained dividends. As has already appeared, they knew of the contracts before mentioned; they had and used the material furnished. The proof as to profits consisted largely of so-called admissions which were more in the nature of an expression of hope or expectation before the transaction referred to was closed than a statement of fact as to conditions after a final disposition of the business

had been reached.    If any defense is open to the defendant, we think it clear it can only be upon an accounting where all the equities of the parties can be reached.

Judgment is affirmed.

MCALVAY, BROOKE, BLAIR, and STONE, JJ., concurred.