[Civ. No. 3314.   Fourth Dist.   May 15, 1944.]

OILWELL  CHEMICAL  AND  MATERIALS  COMPANY
(a Corporation), Appellant, v. PETROLEUM SUPPLY
COMPANY  (a  Corporation),  Respondent.

Stanley Pedder and Kenneth Ferguson for Appellant.

Calvin H. Conron, Jr., for Respondent.

MARKS, J.—This is an appeal from a judgment in an action for money had and received. Defendant denied the material allegations of the complaint and pleaded the bar of subdivision 1 of section 339 of the Code of Civil Procedure and of section 364 of the Civil Code.

On January 18, 1939, Frank Goldman and Sam Self incorporated the plaintiff, Oilwell Chemical and Materials Company, with Sam Self as president, Frank Goldman as vice president and treasurer, and J. W. Heard, Jr., their attorney, as secretary and member of the board of directors. Goldman and Self each subscribed for ten shares of the capital stock which were issued to them on March 29, 1939, upon their paying $200 to the company. On March 30, 1939, Goldman transferred his stock to the defendant corporation of which he was the manager.

Plaintiff corporation was under the direct and active management of Goldman and Self until June 26, 1940, when they, with J. W. Heard, Jr., resigned and were succeeded by officers and directors selected by S. L. Abbott who did business under the name of S. L. Abbott Company. Defendant corporation guaranteed plaintiff's indebtedness to S. L. Abbott Company.

Plaintiff, under the management of Goldman and Self, actively engaged in business in 1939 and until about May, 1940. Its accounts were kept by a bookkeeper who submitted monthly trial balances to the two directors. These trial balances showed the following surplus or undivided profits:

|  |  |
| --- | --- |
| October 31, 1939 | $7,228.68 |
| November 30, 1939 | 1,628.47 |
| December 31, 1939 | 991.41 |
| January 31, 1940 | 31.85 |

They showed the following deficits:

February 28, 1940 ...................$833.96
March 31, 1940.................... 1,906.94
April 30, 1940..................... 3,349.01

Plaintiff was indebted to S. L. Abbott Company in a considerable amount and could not pay this bill. Early in May, 1940, Abbott pressed for payment and took possession of the books and records of plaintiff and negotiated for a settlement. This resulted in a contract dated June 26, 1940. Self and defendant transferred their stock to Abbott who then became the sole stockholder of plaintiff. Self was employed by plaintiff at a fixed salary and a share of the profits made. Abbott released defendant from its guarantee of the account of plaintiff. Thereafter plaintiff continued in business under control of a board of directors and officers selected by Abbott. At no time was plaintiff adjudged insolvent or bankrupt but was apparently doing business under the control of the officers and directors selected by Abbott, at the time of the trial of this action in March, 1943.

When the income tax returns for plaintiff were prepared in March, 1940, showing the business done in 1939, certain adjustments were made in the figures shown in the trial balances so that instead of showing a surplus of $991.41 on December 31, 1939, there was shown an actual loss or deficit of $3,041.21 on that date.

In October, 1939, Self needed money. He and Goldman agreed that Self could withdraw some of the profits or surplus from the treasury of plaintiff, provided an equal amount was paid to defendant, the other stockholder. The withdrawals were made by the common consent of the two men who were the sole stockholders. These withdrawals were not authorized at any directors or stockholders meeting. Defendant was paid the following amounts:

In October, 1939...................$ 700.00
November, 1939................. 1,150.00
December, 1939................. 1,020.81

These payments to defendant were entered on the books of plaintiff as dividends, under the heading, "Petroleum Supply Company Dividend Account," and those made to Self, under the heading, "Sam Self Dividend Account."

These withdrawals were continued in 1940. Defendant received the following amounts:

| | |
|---|---|
| January, 1940 | $500.00 |
| February, 1940 | 200.00 |
| March, 1940 | 274.80 |
| April, 1940 | 593.87, |

of which sum $359.29 was returned to plaintiff making the total withdrawals by defendant in 1940, $1,209.38.

These withdrawals by defendant and Self in 1940 were not carried on the books as dividends but as commissions, though no claim is made that any such commissions were earned. There is evidence to the effect that they were so carried because of an uncertainty as to whether it would be better for income tax purposes to class them as dividends or commissions. Counsel for plaintiff maintains, and we think correctly so, that they cannot be regarded differently from those withdrawals made in 1939. None of them were authorized at any directors or stockholders meeting, but only by common consent of the two stockholders of plaintiff. The evidence seems to indicate that with the possible exception of the withdrawals made in October, 1939, none of them were made from surplus or profits but were in reality disbursements of the capital assets of plaintiff and were made in violation of the provisions of section 346 of the Civil Code. For the purpose of this opinion we will assume, without holding, that none of the withdrawals were made from profits or surplus but were taken from capital in accordance with the contention of plaintiff.

Speaking very generally, dividends may be declared by the board of directors only out of profits or surplus. (Civ. Code, § 346.) It is only under circumstances not appearing here that they may be declared and paid out of capital.

Since the adoption of the codes in 1872, and up to the time of the passage of the General Corporation Law in 1931 (Stats. 1931, p. 1762) section 309 of the Civil Code made those directors of a corporation disbursing corporate capital jointly and severally liable for any wilful or negligent violation of the provisions of the first paragraph of the section which prohibited payment of dividends from any other funds than surplus profits with certain exceptions not important here. The liability ran to the shareholders of the corporation, or, in case of insolvency, to its receiver, liquidator or trustee

in bankruptcy to the full amount of any loss sustained by the shareholders or creditors by reason of any such unauthorized dividend, withdrawal or distribution. It is held that the corporation may bring such action. (*Southern Cal. Home Builders* v. *Young,* 45 Cal.App. 679 [188 P. 586].) The right of contribution was given against directors and against any shareholder knowingly receiving or accepting such distribution.

This section was a modification of the common law rule as applied in many jurisdictions. Instructive discussions of the development and the varied application of this rule are to be found in 13 Am. Jur. p. 750, et seq., 55 A.L.R. p. 98 et seq., 76 A.L.R. p. 893, et seq., 109 A.L.R. p. 1393, et seq., and L.R.A. 1917C 403, et seq.

When the General Corporation Law was passed, section 309 of the Civil Code in a completely modified form was enacted as section 364 of that code. (Stats. 1931, p. 1816.) As then enacted it provided as follows:

"Any shareholder who knowingly receives any dividend or distribution of assets not authorized by this title shall be individually liable to the corporation for the amount so received by him, with interest from date of receipt, in the event that the corporation is unable to meet its debts and liabilities as they mature. Any two or more shareholders may be sued in the same action."

This section was amended (Stats. 1933, p. 1358) to read as follows:

"Any shareholder or owner of shares who receives any dividend not authorized by this title with knowledge of facts indicating the impropriety thereof shall be liable to the corporation or to its receiver, liquidator or trustee in bankruptcy for the amount so received by him with interest thereon at seven per cent per annum until paid in the event that the corporation is adjudged insolvent or bankrupt in any action or proceeding begun within one year after the receipt of such dividend. Any number of shareholders may be sued in the same action."

Subsequent amendments have not materially changed the purport of the section.

█ This action was brought to recover the withdrawals paid to defendant. As those withdrawals were admittedly

paid to defendant, and as we have assumed that all of them were from capital and therefore not authorized by the provisions of the Civil Code, we need only consider the plea of the bar of the statutes of limitations made in the answer of defendant. The record discloses that the plea of the bar of subdivision 1 of section 339 of the Code of Civil Procedure is not available to defendant so we must consider the limitation on the right of action contained in section 364 of the Civil Code. In this connection it should be observed that the section, as originally passed in 1931, contained no condition nor time limitation of any kind on the right of action. That provision was added in 1933, and we must presume that it was the intention of the Legislature to accomplish just what its plain language implied. Clearly, this limits the action of the corporation, its receiver, liquidator or trustee in bankruptcy against the shareholder to recover an unauthorized dividend paid him, to those cases in which the corporation has been adjudged insolvent or bankrupt within one year after the shareholder has received the unlawful payment. In the instant case the corporation has not been adjudged insolvent or bankrupt but was doing business under the control of S. L. Abbott, its principal creditor in 1940, at the time this action was tried in March, 1943. It is therefore apparent that if the withdrawals paid to defendant in 1939 and 1940, be classed as dividends, as that term is used in section 364 of the Civil Code, plaintiff has failed to establish its right to recovery under the plain language of the section as there has been no adjudication of insolvency or bankruptcy which that section makes a prerequisite to an action of this kind to recover unauthorized dividends.

Not only has there been no adjudication of insolvency or bankruptcy within one year after the unauthorized payments, but Abbott, the principal creditor, took over the corporation and continued it in business under his own management in the apparent hope of making profits for himself in excess of the amounts he could have recovered from the stockholders receiving the unlawful withdrawals. If these withdrawals were dividends, as the term is used in section 364 of the Civil Code, Abbott had two courses open to him when he took over the corporation in June, 1940. He could have had the corporation adjudged insolvent or bankrupt and instituted an action to recover the unauthorized withdrawals or he could have continued the corporation in business with the expecta-

tion of recouping his losses, which were then apparent, and of making additional profits for himself. He chose the latter course. Thus the important question presented is whether or not the unauthorized withdrawals paid defendant were dividends as that term is used in the code section. We have been cited to no reported California case, nor have we been able to find one, construing section 364 of the Civil Code.

Counsel for plaintiff argues that the word "dividend" is well defined in the law; that a dividend must be declared by formal action of the board of directors of a corporation; that it can only be paid from profits and not out of capital, except under circumstances not appearing here; that as the withdrawals in question here were not authorized by the board of directors and were not paid from profits but from capital, those withdrawals may not be classified as dividends; that as section 364 of the Civil Code only purports to limit actions to recover unauthorized dividends, and as the payments made to defendant were not dividends, the limitations of the section cannot apply to this action.

This argument overlooks the true purpose of the section. Where dividends are regularly and legally declared by the board of directors of a solvent corporation and are legally paid out of profits, no action to recover them lies against the stockholder regularly receiving them. The matter of the declaration and payment of such dividends is one of internal administration of the corporation. Their payment amounts to a division among and a distribution to the stockholders of a fund that in reality belongs to them. By its clear terms section 364 of the Civil Code does not purport to legislate concerning such dividends lawfully declared and paid out of profits but is only concerned with a "dividend not authorized by this title" of the Civil Code. This must refer to division of profits or capital of a corporation not made in accordance with the corporation law of the state. This certainly would include distribution of capital among stockholders under the circumstances here presented because such distribution is not only not authorized but is expressly prohibited by the Civil Code.

While the word "dividend" often is used to refer to the payment of a portion of the profit of a corporation to its stockholders, in equal amounts according to the number of shares of stock of a certain class owned by each of them, it

has other meanings. In *People* v. *White,* 85 Cal.App. 241 [259 P. 76], it was said:

"The term 'dividends' is not limited in its significance to the earnings of corporation stock, but is one of quite general meaning. 'Both in common and legal parlance the term implies a portion of a fund divided among several others. . . . The term carries with it the idea of a division of a fund owned by several parties, and the dividend is the aliquot portion of the estate of the common owners.' (18 Corpus Juris, 1406; *In re Fielding,* 96 F. 801.)"

While there is no uniformity of opinion on this question in the various jurisdictions of this country there is eminent authority holding that where the stockholders of a corporation agree upon a distribution of its profits among all of the stockholders, such a distribution is a dividend even though the law requiring that the dividend be declared by formal action of the board of directors was not observed. (See *Hartley* v. *Pioneer Iron Works,* 181 N.Y. 73 [73 N.E. 576]; *Berryman* v. *Bankers' Life Ins. Co.,* 117 App.Div. 730 [102 N.Y.S. 695]; *Barnes* v. *Spencer & Barnes Co.,* 162 Mich. 509 [127 N.W. 752, 139 Am.St.Rep. 587]; *Breslin* v. *Fries-Breslin Co.,* 70 N.J.L. 274 [58 A. 313]; *Spencer* v. *Lowe,* 198 F. 961 [117 C.C.A. 497]; *Thiry* v. *Banner Window Glass Co.,* 81 W.Va. 39 [93 S.E. 958]; *Freeman* v. *Rogers White Lime Co.,* 138 Ark. 312 [211 S.W. 146]; *Central of Georgia Ry. Co.* v. *Central Trust Co. of N. Y.,* 135 Ga. 472 [69 S.E. 708]; *In re Wilson's Estate,* 85 Or. 604 [167 P. 580]; *Grants Pass Hdw. Co.* v. *Calvert,* 71 Or. 103 [142 P. 569]; *Nichols* v. *Olympia Veneer Co. Inc.,* (139 Wash. 305 [246 P. 941, 48 A.L.R. 504].)

In view of the foregoing authorities and what seems to be the clear meaning of section 364 of the Civil Code we have reached the conclusion that the phrase "dividend not authorized by this title" refers to dividends not lawfully declared and also to illegal distribution of capital to stockholders such as we have here. This being so, the principal creditor of plaintiff having taken over the corporation and having continued it in business, and the corporation not having been "adjudged insolvent or bankrupt in any action or proceeding begun within one year after the receipt of such dividend," the plaintiff cannot maintain this action and cannot recover the withdrawals from defendant.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.