AUER v DEPARTMENT OF TREASURY

Docket No. 67137. Submitted February 23, 1984, at Lansing.—Decided July 10, 1984.

The Department of Treasury issued deficiency assessments against E. David Auer and Patricia Auer for intangibles tax liability for the years 1975, 1977, and 1978. The Auers filed a petition for review in the Michigan Tax Tribunal, which upheld the deficiency assessments. The Auers appeal, arguing that they are not liable for any tax imposed upon them for the year 1977 because the Department of Treasury did not give proper notice of a deficiency assessment for that year's taxes and that the Department of Treasury erroneously treated compensation received by David Auer from a subchapter S corporation as dividend income rather than ordinary income. *Held:*

1. The Tax Tribunal correctly found that the Auers were on notice that their intangibles tax liability for 1977 was at issue. The spirit and intent of the notice provisions of the intangibles tax act were complied with.

2. The Department of Treasury did not err in treating the income at issue as dividend income rather than ordinary income.

Affirmed.

1. TAXATION — INTANGIBLES TAX — DEFICIENCY ASSESSMENTS — NOTICE.

The purpose of the notice provisions of the intangibles tax act is to provide the taxpayer with notice that deficiency assessments have been levied for certain tax years and to afford the taxpayer an opportunity to contest the assessments; a defect in formal notice does not violate due process where notice is in fact given (MCL 205.23, 205.143; MSA 7.657[23], 7.556[13]).

REFERENCES FOR POINTS IN HEADNOTES
[1] 71 Am Jur 2d, State and Local Taxation §§ 197, 596, 598.
[2] 29 Am Jur 2d, Evidence § 127.
  71 Am Jur 2d, State and Local Taxation § 713.
[3] 71 Am Jur 2d, State and Local Taxation § 501 *et seq.*
Income tax consequences to shareholder of dividend in kind. 56 ALR2d 474.

2. TAXATION — BURDEN OF PROOF.
     The burden is always on the state to establish the necessary facts
     to sustain a claim for taxes or revenue.

3. CORPORATIONS — DISTRIBUTION OF PROFITS — DIVIDENDS.
     Distributions made from corporate earnings and profits in rela-
     tive proportion to stock ownership constitutes a dividend,
     whether denominated as such or not.

*Rothstein, Erlich & Rothstein* (by *Stewart I. Erlich*), for petitioners.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch* and *Curtis G. Beck,* Assistants Attorney General, for respondent.

Before: BRONSON, P.J., and R. B. BURNS and R. L. BORSOS,* JJ.

PER CURIAM. This case is an appeal from the Michigan Tax Tribunal, which affirmed a deficiency assessment against petitioners for intangibles tax liability. We affirm.

The deficiency assessments apply to tax years 1975 and 1977. In addition, petitioners did not file an intangibles tax return for 1978, but the tribunal found petitioners liable in the amount of $4,063, plus interest and penalty. The deficiency for 1975 and 1977 totalled $8,437, plus interest and penalty.

The controversy arises out of the Department of Treasury's audit of Clintonview Care Center, Inc., as a subchapter S corporation, which provides nursing home health care services in the State of Michigan and of which petitioner E. David Auer is a 25 percent shareholder and officer. The Department of Treasury audited petitioners for tax years

---

* Circuit judge, sitting on the Court of Appeals by assignment.

1975 and 1977. Subsequently, a notice of intent to assess was issued on July 19, 1979, and notices of final assessment were issued on August 9, 1979, and on December 12, 1980. The notices erroneously indicated that the involved assessment was for tax years 1974 and 1975. A "corrected assessment", indicating that the years involved were 1975 and 1977, was later issued. Respondent contends that the corrected assessment was requested on August 23, 1979, and issued in the latter part of that month. Petitioner E. David Auer stated, however, that he did not remember receiving such corrected assessment.

On November 23, 1979, the Department of Treasury also sent petitioners the notice of assessment for the tax year 1978. Since petitioners had not filed an intangibles tax return for the year 1978, respondent computed the assessment using the 1977 audit base plus 10 percent.

During the years in question, the records of the corporation indicated substantial distributions of dividends to petitioners. The amounts received by petitioners from the corporation during these years were reported in their federal and state income tax returns as being dividend income. Further, the corporation did not issue any wage statements to petitioners indicating payment of wages or salary to Mr. Auer.

Mr. Auer testified that he provided various services to the corporation and that the payments he received from the corporation were actually earned income for such services. These services included his managing of financial and real estate matters, as well as general maintenance and the chairing of several committees. He further contended that the payments received by him were not reported as compensation because he did not

want to jeopardize Clintonview's participation in Medicare/Medicaid programs. He asserted that the amounts due and paid him as owner would not be permissible under federal and Michigan Department of Social Services regulations. According to Mr. Auer, these regulations permit an administrator to earn only $65,000 annually. Since the Center's administrator was paid a salary of $50,000, there remained only $15,000 which could be considered compensation for comparable services. This amount had to be divided among himself and the other shareholders who performed services. Mr. Auer claimed that his classification of the income for purposes of meeting federal and state regulations did not affect the true nature of the income, *i.e.,* compensation for services. Accordingly, he argued that his federal and state tax returns were not determinative for intangibles tax liability. Finally, he testified that his compensation (in fact) was to be between $115,000 and $120,000 per year, so that he reported as dividends subject to intangibles tax only that income which exceeded $120,-000. The corporation's other shareholders, however, even though not providing services to the corporation, received distributions in proportion to their holdings and equal to those received by him.

During the evidentiary hearing before the tribunal, petitioners indicated that 1978 payments received from the Clintonview Care Center amounted to $116,000, and respondent stipulated that the 1978 tax year assessment should be reduced by $583.20.

The tribunal affirmed the Treasury Department's intangibles tax deficiency assessment for the years 1975 and 1977, and also affirmed the department's intangibles tax deficiency assessment for tax year 1978, as modified by the stipulated

agreement of the parties at the time of the hearing.

Petitioners claim that the respondent failed to give proper notice of a deficiency assessment for 1977 so that petitioners are not liable for any tax imposed upon them for that year.

MCL 205.23; MSA 7.657(23) provides that if the department determines that a taxpayer has not satisfied his tax liability, the taxpayer *shall* be notified of that determination. This section became effective September 16, 1980; however, MCL 205.143; MSA 7.556(13) formerly provided that actual notice must be given to the taxpayer of an intent to assess. Also, if a taxpayer does not pay the tax upon notice of the intent to assess, the taxpayer must be give notice of a final assessment. Respondent first notified petitioners that the years in question were 1974 and 1975. Petitioners claim that there was never any notice with respect to 1977, that notice is a condition precedent to the imposition of tax and that therefore the Tax Tribunal erred in finding petitioners liable for any tax for 1977.

The statutory notice provisions are ostensibly designed to provide due process of law, *viz.,* the purpose is to provide the taxpayer with notice that deficiency assessments have been levied for certain tax years and to afford the taxpayer an opportunity to contest them. A defect in formal notice does not violate due process where notice in fact was given. See *Building Owners & Managers Ass'n of Metropolitan Detroit v Public Service Comm,* 131 Mich App 504; 346 NW2d 581 (1984).

In this case, the evidence supported and the tribunal correctly found that petitioners were, in fact, on notice that their intangibles tax liability for 1977, not 1974, was at issue. The spirit and intent of the notice provisions were complied with.

The audit report indicates that the years 1975 through 1977 were being audited. Such "work papers" were sent to petitioners. Petitioners were also afforded a department-level informal conference on August 13, 1980, at which the years 1975-1977 were discussed. In addition, a "corrected assessment" was issued and there is no indication that tax year 1974 was ever involved or that petitioners were ever required to provide information on that year. Finally, petitioner David Auer's testimony that he does not "recall" whether he received the corrected notice is insufficient in the face of the above evidence of notice.

Petitioners also claim that the respondent erred by finding that the compensation was dividends and not ordinary income. MCL 205.131(d); MSA 7.556(1)(d) describes income subject to intangibles tax:

" 'Income' includes: (1) interest received upon tangible personal property; (2) dividends on other distributions, whether in the form of cash or property, to the extent that they represent the yield of intangible personal property * * * (3) *all other earnings or yield of intangible personal property regardless of the name by which designated.* For the purpose of computing the tax imposed under this act, the gross income, including taxes, charges and other deductions which may be made therefrom, shall be the basis upon which the tax shall be measured." (Emphasis added.)

In *Consumers Power Co v Corporation & Securities Comm,* 326 Mich 643, 651; 40 NW2d 756 (1950), it was observed that the burden is always on the state to establish the necessary facts to sustain a claim for taxes or revenue. Therefore, the issue is whether the state can "sustain a claim for taxes" under the facts. We conclude that the state has carried its burden.

First, the income was in fact reported as dividend income on petitioners' state and federal income tax returns. Although the intangibles tax act does not rely upon the definition of "dividend" used for federal income tax purposes, *Davis v Dep't of Treasury,* 124 Mich App 222; 333 NW2d 521 (1983), this is not a case of conflicting definitions, but, rather, involves a taxpayer's choice in the first instance to classify certain income as dividend income in order to receive desired treatment in another forum. Thus, there is at least an inference that the taxpayer has in fact earned income subject to the intangibles tax act.

Second, petitioners have pointed to no wage statements (W-2) indicating that the income was compensation. There has also been no showing of an employment agreement or anything else demonstrating that the income was intended to be compensation for services. While it is true that Mr. Auer is entitled to receive compensation for services rendered, the only support for this contention was his testimony that it was "agreed" that he would receive between $115,000 and $120,000 per year as compensation. Curiously, Mr. Auer chose to employ the higher figure as his "earned" compensation so that his intangibles tax liability would be diminished. While there was testimony that petitioner performed many valuable managerial services, there was no evidence as to the amount of such services, so that even accepting his contention regarding the understanding on his compensation, there is no explanation why his compensation was placed at $120,000 per year rather than $115,000. In the situation of a subchapter S corporation, where the line between compensation and dividends is very fine, there must be more than a naked assertion that, because

a petitioner was entitled to compensation, the monies received were compensation.

Third, and most compelling, the testimony indicated, and the tribunal found, that Mr. Auer's "compensation" was proportional to his interest in the corporation vis-à-vis the other shareholders, *i.e.,* the distributions were made from corporate earnings and profits in relative proportion to stock ownership. "The distribution of profits in this manner * * * constituted a dividend, whether denominated such or not. *Barnes v Spencer & Barnes Co,* 162 Mich 509; 127 NW 752 (1910)." *Erdman v Yolles,* 62 Mich App 594, 597; 233 NW2d 667 (1975).

Affirmed.